DONEOY, LTD., Plaintiff,

v.

UNITED STATES of America,
Defendant.

DOSTREY, LTD., Plaintiff,

v.

UNITED STATES of America,
Defendant.

LACANCAL, LTD., Plaintiff,

v.

UNITED STATES of America,
Defendant.

TRANSPAT, LTD., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. 38496–38499.

United States District Court
N. D. California, S. D.
May 3, 1961.

Laurence E. Dayton, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for the United States.

Valentine Brookes, Richard Wilson, Kent & Brookes, San Francisco, Cal., for plaintiffs.

SWEIGERT, District Judge.

These cases, consolidated upon defendant's motion, are suits for the recovery of federal income tax. Plaintiffs, Canadian corporations, allege that, during the taxable years, 1955 and 1956, they were limited partners in California limited partnerships, that they did not have a permanent establishment in the United States, that, therefore, the rate of tax applicable to them was 15% under Article XI of the Tax Convention with Canada, and that all tax paid in excess of that rate was overpaid and should be refunded.

Defendant filed answers denying these allegations and also filed counter-claims in No. 38496 and No. 38498, seeking recovery of certain alleged due and unpaid tax for the year 1956. Plaintiffs in these cases have answered denying the allegations of these counter-claims.

Plaintiffs' motion for summary judgment, supported by various affidavits, is now before the Court. Defendant opposes the motion on the ground that, even upon the facts, claimed by plaintiff to be undisputed, the applicable law is such that plaintiffs' motion should not be granted, and upon the ground that a material issue of fact exists which precludes the granting of summary judgment.

The Court discusses these cases upon the record filed in No. 38496. It is clear, however, that its reasoning applies equally to all cases.

The question of law is whether a Canadian corporation, which is a limited partner in a California limited partnership, has a permanent establishment in the United States within the meaning of Article XI of the Tax Convention with Canada. (56 Stat. 1399, 1402 (1942).

That Tax Convention, effective January 1, 1941, provides:

"The rate of income tax imposed by one of the contracting States, in respect of income (other than earned income) derived from sources therein upon individuals residing in, or corporations organized under the laws of, the other contracting State, and not having a permanent establishment in the former state, shall not exceed fifteen per cent for each taxable year.

\*     \*     \*     \*     \*     \*

"As used in this convention: \* \* \* the term 'permanent establishment' includes branches, mines and oil wells, farms, timber lands, plantations, factories, workshops, warehouses, offices, agencies and other fixed places of business of an enterprise, but does not include a subsidiary corporation. The use of substantial equipment or machinery within one of the contracting states at any time in any taxable year by an enterprise of the other contracting state shall constitute a permanent establishment of such enterprise in the former state for such taxable year.

"When an enterprise of one of the contracting parties carries on business in the other contracting state through an employee or agent established there, who has general authority to contract for his employer or principal or has a stock of merchandise from which he regularly fills orders which he receives, such enterprise shall be deemed to have a permanent establishment in the latter state.

"The fact that an enterprise of one of the contracting parties has business dealings in the other contracting state through a commission agent, broker or other independent agent or maintains therein an office used solely for the purchase of mer-

chandise shall not be held to mean that such enterprise has a permanent enterprise in the latter state."

It will be noted that the statute expressly provides that the term "permanent establishment" does not include (a) a subsidiary corporation (b) doing business through a commission agent, broker or other independent agent (c) an office maintained solely for the purchase of merchandise.

It has been held, accordingly, that a resident of Switzerland who owned certain United States rental property which he merely managed and operated through local real estate agents, although to that extent engaged in business here, did not have a permanent establishment in the United States within the meaning of the similar Swiss Tax Convention. Inez de Amodio, 1960, 34 T.C. 894. The tax court held quite properly, that neither the real estate itself nor the real estate office of his brokers constituted a permanent establishment because the Convention expressly excepts business dealings through a broker or independent agent.

By express provision of the statute, the term "permanent establishment" *does* include carrying on business through an established employee or agent, who has general authority to contract for his employer or principal *or* has a stock of merchandise from which he regularly fills orders.

Accordingly, it has been held that a partner in a general partnership has a permanent establishment within the meaning of the Convention. W. C. Johnston, 1955, 24 T.C. 920.

Plaintiff contends that a limited partner in a California limited partnership, as distinguished from a general partner, should not be held to have a permanent establishment in the United States. A limited partner, argues plaintiff, unlike a general partner, is not in the position of one who carries on an enterprise through an agent who has general authority to contract for him because under California law, a limited partner may not himself, control the conduct of the part-

nership business which must be left to the control of the general partners.

This is true to the extent that the Uniform Limited Partnership Act provides that "a limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." UPA Sec. 7; Cal.Corp.Code, Sec. 15507.

Further, plaintiff argues, a general partner does not have general authority to contract for a limited partner.

This is true to the extent that the Uniform Partnership Act provides that "The limited partners * * * shall not be bound by the obligations of the partnership." UPA Sec. 1; Cal.Corp.Code Sec. 15501.

This section must, of course, be read with UPA Sec. 7, Cal.Corp.Code 15507, supra, and further, it should be noted that under UPA Sec. 9, Cal.Corp.Code Sec. 15509, a general partner "shall have all the rights and powers and be subject to all the restrictions * * * of a partner in a partnership without limited partners * * * " with certain specified exceptions not applicable here.

Therefore, although a partner does not, because of the statute, bind the limited partner upon the partnership obligations to third parties and creditors, the general partner does have general authority to control and conduct, by making contracts or otherwise, the business of the partnership of which the limited partner is a member and whose assets and profits the limited partner is entitled to share.

It may be noted that under certain circumstances the liabilities of a limited partner to the partnership may be enforced by a creditor, or by the partners, for the benefit of creditors. UPA Sec. 17, Cal.Corp.Code Sec. 15517(3) (4).

In the instant matter, there is a written agreement or certificate of limited partnership required by California law. (Ex. A, attached to Plaintiffs' Second Reply Memorandum). It lists plaintiffs, Trans-

pat and Dostrey, as limited partners and provides that "the character of the business is dealing in beverages, both alcoholic and non-alcoholic, and other products, and the purchase, improvement, lease, rental operation, sale and otherwise dealing in real property and engaging in the transportation business." The amended certificate (Ex. B, supra) adds "and also to render merchandising and accounting advice and services and financial assistance to persons engaged in such businesses."

The certificate describes the location of the partnership, the name and place of residence of all partners, general and limited, describes the term of partnership, capital contributions made and share of profits allocable to each limited partner, and other provisions relating to the rights of the limited partners.

Plaintiff contends that under the law, which we have summarized, the plaintiffs, limited partners in a California partnership, should be considered as doing business through a commission agent, broker or independent agent, rather than as doing business through an agent with general authority to contract for him or as doing business similar to one with a stock of merchandise from which his agent regularly fills orders.

The distinction which the Convention seems to make between an employee or agent with general authority to contract for his employer or principal, on the one hand, and a commission agent, broker, or other independent agent, on the other, is, we believe, merely a statement of the traditional distinction between a general agent and a special agent or independent contractor.

A useful definition is contained in 1 Mechem on Agency, Section 60 (2d Ed. 1914): "A general agent is one to do all the acts pertaining to a business of a certain kind or at a particular place, or all the acts of a particular class or series * * * An agent * * * who is empowered to transact all the business of his principal of a particular kind or in a particular place would * * * be or-

dinarily deemed a general agent." Ordinarily, power to act generally in a particular business or a particular course of trade in a business, however limited, would constitute a general agency. Crain v. First National Bank, 1885, 114 Ill. 516, 2 N.E. 486.

A special agent is defined as "one authorized to do some particular act or to act upon some particular occasion. He acts usually in accordance with specific instructions or under limitations necessarily implied from the nature of the act to be done." 1 Mechem, supra, section 61.

A broker generally means a person engaged for others in the negotiations of contracts relative to property with respect to which he ordinarily has neither possession nor special interest. 1 Mechem, supra, Section 73.

An independent agent, or independent contractor, generally means one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of the employer except as to the result of the work. 1 Mechem, supra, Section 40.

The Convention refers, not only to agents, but also to employees who carry on business with *either* general authority to contract for the employer or principal *or* who have a stock of merchandise from which the agent or employee regularly fills orders.

The evident intent of the Convention seems to be that the test should be, not entirely whether the employee or agent has power to make contracts with third persons which are binding on the employer or principal, but also whether the employee or agent, who is not a mere broker, commission agent or independent contractor, carries on a regular business for the benefit of the employer or principal, as for example, by merely, but regularly, filling orders from a stock of merchandise.

The statutory provision, UPA Sec. 1; Cal.Corp.Code, Sec. 15501, that a limited partner shall not be bound by the obligations of the partnership, and UPA Sec. 7, Cal.Corp.Code Sec. 15507, providing

that a limited partner shall not become liable as a general partner, do not eliminate or affect the broad powers of a general partner, recognized by UPA Sec. 9, Cal.Corp.Code, Sec. 15509, to act for the business benefit of the limited partners so far as the general conduct of the business is concerned and to the financial extent of the limited partner's contribution.

We do not believe that a partner, even a limited partner, who conducts business through the general partners, can be considered as one who merely does business through a broker or special agent.

■ In the State of California, and indeed, in Canada, a partnership, unlike a corporation, is considered to be, not a legal entity, but an association of individuals. Our attention has not been called to any authority to the effect that a limited partnership in this respect is any different from a general partnership. Reed v. Industrial Accident Commission, 1937, 10 Cal.2d 191, 73 P.2d 1212, 114 A.L.R. 720; also, No. 630 v. MNR (1959) Canadian Tax Appeal Board, DTC, 300, 302.

Consistently with this concept, both the United States and Canada look, not to the partnership as such, but to the distributive income of the individual partners for income tax purposes. (See, Sec. 701, IRC, 1954, 26 U.S.C.A. § 701; also, Sec. 6 of the Canadian Income Tax Act).

To say that for practical purposes a limited partner in a partnership is no different from an investing shareholder in a corporation or from the corporate owner of a subsidiary corporation, over- looks the fact that in these latter instances the corporate entities are taxed for and pay income taxes while a partnership, whether limited or general, does not.

■ Under this concept of partnership as an association of individuals, it follows that each partner, whether general or limited has an interest as such in the assets and the profits of the partnership, including the physical plant or offices at which the partnership conducts its business, so that the office or permanent establishment of the partnership is in law, the office of each of the partners— whether general or limited. (See: No. 630 v. MNR, supra).

■ The UPA does not purport to create a new concept of separate legal identities as between the limited partner and the partnership, nor does it purport to create for limited partnership in this respect the separate legal entity concept applicable as between shareholder and corporation.

■ So long as a limited partner, along with the general partners, constitute the partnership, it will have to be recognized that the general partners are the general agents of the limited partners for the general purpose of conducting the business—subject only to the statutory exemption of limited partners from direct obligation to creditors beyond their stated financial commitment—and that all the partners have an interest in the partnership assets, including its office.

■ We are of the opinion, therefore, that the general partner of a California limited partnership is a general agent of the limited partner within the meaning and intent of the Tax Convention, and that, therefore, the office of the limited partnership is in effect the permanent establishment of the limited partner within the United States.

Even if it were assumed, however, that a limited partner is not, as such, so related to a general partner, and to the partnership itself, that the office of the latter is the office of the former, we have the further provision of UPA Sec. 7, Cal. Corp.Code Sec. 15507, that a limited partner who takes part in the control of the business becomes liable even to creditors, as a general partner.

The pleadings herein indicate that defendant has not admitted that plaintiffs are in fact limited partners who have not so taken part in the control of the business as to become liable as general partners under this section.

Defendant has filed a counter affidavit of one Compton (filed January 23, 1961)

**60**

stating that one Murnane, a secretary and assistant treasurer of plaintiff Dostrey, Ltd., is also a full time employee of the limited partnership and, further that plaintiff has been required by Federal Alcohol Control Administration to qualify for the transaction of business in California in order to obtain a license to engage in the liquor business and that plaintiff did so comply by designating offices in the state and an office in San Francisco.

Defendant in its brief argues that this dual employment of Murnane raises the question whether this might constitute such management and control by plaintiff as would deprive plaintiff of its limited partner status, if any.

While the counter affidavit of defendant is incomplete and at best raises an inference of possible control, we believe that it should be regarded as sufficient on a motion for summary judgment to preserve the right of defendant to amplify the affidavit or to litigate this important issue of fact on a trial if that were necessary.

The same may be said with respect to the allegation of the affidavit with respect to the establishment of an office in San Francisco so far as that might have a bearing on the question of control or permanent establishment.

It has been held that, although the general partner has the management of the business, a limited partner does not, from the mere fact that his contribution is limited, cease to have a voice in the management or disposition of the property of the partnership and that for tax purposes the issues of the good faith of the arrangement, and the exercise of control are issues of fact. Toor v. Westover, D.C., 94 F.Supp. 860.

For these reasons, we are of the opinion that plaintiff's motion for summary judgment should be denied. Defendant, as prevailing party herein, will prepare an order in accordance with this opinion and in conformity with the Rules of this Court.