**DONROY, LTD., Dostrey, Ltd., Lacancal, Ltd., and Transpat, Ltd., Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 17463.**

United States Court of Appeals Ninth Circuit.

April 2, 1962.

**201**

---

Valentine Brookes, Paul E. Anderson, and Richard A. Wilson, San Francisco, Cal., for appellants.

Louis F. Oberdorfer, Asst. Atty., Gen., Lee A. Jackson, Joseph Kovner and Gilbert E. Andrews, Attys., Department of Justice, Washington, D. C., and Cecil F. Poole, U. S. Atty., and Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN and BROWNING, Circuit Judges, and MURRAY, District Judge.

HAMLIN, Circuit Judge.

Appellants herein, Donroy, Ltd., Dostrey, Ltd., Lacancal, Ltd. and Transpat, Ltd., four Canadian corporations, filed separate actions in the District Court for the Northern District of California, Southern Division, against the United States seeking refunds of income taxes assessed against appellants for the years 1955 and 1956 and paid by appellants.[1] The United States filed counterclaims in the actions filed by Donroy, Ltd. and Lacancal, Ltd., claiming additional income taxes for 1956. Upon the motion of the United States the district court ordered that the four actions be consolidated. Thereafter, appellants filed motions for summary judgment and the United States, appellee herein, filed a motion for

---

1. Appellants had theretofore filed timely claims for refund more than six months before the actions were filed.

summary judgment on both the complaint and the counterclaim. The district court denied appellants' motions for summary judgment and granted the appellee's motion for summary judgment. Notice of appeal was timely filed in this court. The jurisdiction of this court is founded upon 28 U.S.C.A. § 1291.

The record shows that in March, 1953, a certificate of limited partnership under the name of Security Products was filed in San Francisco showing one general partner and three limited partners. Two of those limited partners—Transpat, Ltd. and Dostrey, Ltd.—are appellants herein. This certificate shows that the three limited partners are collectively entitled to 90% of the net profits of the partnership, Transpat and Dostrey each being entitled to 38.09% thereof. An amendment to the certificate of partnership filed in November 1954, provides:

> The character of the business is dealing in beverages, both alcoholic and non-alcoholic, and other products, and the purchase, improvement, leasing, rental, operation, sale and otherwise dealing in real property, and engaging in the transportation business; and also to render merchandising and accounting advice and services and financial assistance to persons engaged in such businesses.

In April, 1953, a certificate of the formation of a limited partnership under the name of Western United Company was filed in San Francisco showing one general partner and nine limited partners. Collectively, the limited partners were entitled to 83% of the profits of the business. Two of said limited partners, Lacancal, Ltd., and Donroy, Ltd., are appellants herein and each was declared to be entitled to 20% of the profits of the limited partnership. An amendment to this certificate of partnership was similarly filed in November, 1954, setting out the character of the business in the same language as hereinabove set out in reference to Security Products.

The record further shows that the office of each of these limited partnerships, Security Products and Western United Company, was 2444 San Bruno Avenue, San Francisco. On each of the income tax returns filed by each of the appellants the address given thereon was 2444 San Bruno Avenue, San Francisco, California. The minutes of each appellant corporation contained a statement that "the principal office for the transaction of the business of the company outside of the Dominion of Canada is hereby fixed at 2444 San Bruno Avenue, San Francisco, California."

Dostrey, Ltd., made a "Request for Ruling" addressed to the Commissioner of Internal Revenue apparently on behalf of each of the four appellant corporations which contained, *inter alia*, the following statement:

> [T]he corporation maintains an office address at 2444 San Bruno Avenue, San Francisco, in compliance with Chapter 3 of the Corporations Code of California. Such compliance is necessitated under the Federal and California Liquor Control laws by the following facts:

> The business of Security Products required it to comply with the provisions of the Federal Alcohol Administration Act, 27 U.S.C. 203(c), which provides that persons engaged in the business of purchasing distilled spirits, wine or malt beverages, at wholesale, for resale, must obtain a basic permit from the Secretary of the Treasury. Such permit is issued only where operations under it will not be in violation of the laws of the state concerned (27 U.S.C. 204(a) (2)).

> Under the Business and Professions Code of California, Section 23021, Security Products is a "wholesaler." Under Section 23378 and Section 23379, it exercises the rights of a "licensee," and under Section 23300 it must have a license.

> As a matter of administrative procedure, although without expressed statutory basis, licenses will not be issued to limited partnerships with

corporate limited partners unless all such corporate limited partners are qualified for the transaction of intra-state business under Chapter 3 of the Corporations Code of California, mentioned above. This administrative practice is adhered to regardless of whether the limited partner takes an active part in the business of the partnership.

In a written opinion District Judge Sweigert ably discussed and resolved the issues involved, and we adopt the following pertinent parts thereof.[2]

The question of law is whether a Canadian corporation, which is a limited partner in a California limited partnership has a permanent establishment in the United States within the meaning of Article XI of the Tax Convention with Canada. (56 Stat. 1399, 1402 (1942) ).

That Tax Convention, effective January 1, 1941, provides:

"The rate of income tax imposed by one of the contracting States, in respect of income (other than earned income) derived from sources therein upon individuals residing in, or corporations organized under the laws of, the other contracting State, and not having a permanent establishment in the former state, shall not exceed fifteen per cent for each taxable year.

\* \* \* \* \* \*

"As used in this convention: \* \* the term *'permanent establishment'* includes branches, mines and oil wells, farms, timber lands, plantations, factories, workshops, warehouses, *offices*, agencies and other fixed places of business of an enterprise, but does not include a subsidiary corporation. The use of substantial equipment or machinery within one of the contracting states at any time in any taxable year by an enterprise of the other contracting state shall constitute a permanent establishment of such enterprise in the former state for such taxable year.

"When an enterprise of one of the contracting parties carries on business in the other contracting state through an employee or agent established there, who has general authority to contract for his employer or principal or has a stock of merchandise from which he regularly fills orders which he receives, such enterprise shall be deemed to have a permanent establishment in the latter state.

"The fact that an enterprise of one of the contracting parties has business dealings in the other contracting state through a commission agent, broker or other independent agent or maintains therein an office used solely for the purchase of merchandise shall not be held to mean that such enterprise has a permanent enterprise in the latter state."

It will be noted that the statute expressly provides that the term "permanent establishment" does not include (a) a subsidiary corporation (b) doing business through a commission agent, broker or other independent agent (c) an office maintained solely for the purchase of merchandise.

It has been held, accordingly, that a resident of Switzerland who owned certain United States rental property which he merely managed and operated through local real estate agents, although to that extent engaged in business here, did not have a permanent establishment in the United States within the meaning of the similar Swiss Tax Convention. Inez de Amodio (1960) \* \* \* [34 T.C. 894] (No. 92, CCH, 12/24, 315). The tax court held quite properly, that neither the real estate itself nor the real estate office of his brokers constituted a permanent establishment because the Conven-

---

2. Donroy, Ltd. v. United States, 196 F.Supp. 54 (D.C.N.D.Cal.S.D.1961). Emphasis and footnotes have been added.

tion expressly excepts business dealings through a broker or independent agent.[3]

By express provision of the statute, the term "permanent establishment" does include carrying on business through an established employee or agent, who has general authority to contract for his employer or principal or has a stock of merchandise from which he regularly fills orders.

Accordingly, it has been held that a partner in a general partnership has a permanent establishment within the meaning of the Convention. W. C. Johnston (1955) 24 T.C. 920.[4]

Plaintiff contends that a limited partner in a California limited partnership, as distinguished from a general partner, should not be held to have a permanent establishment in the United States. A limited partner, argues plaintiff, unlike a general partner, is not in the position of one who carries on an enterprise through an agent who has general authority to contract for him because under California law, a limited partner may not himself, control the conduct of the partnership business which must be left to the control of the general partners.

This is true to the extent that the Uniform Limited Partnership Act provides that "a limited partner shall not become liable as a general partner unless, in addition to the exercise of his

---

3. In discussing one portion of the facts of this case it was pointed out that John Amodio and his sister Inez, nonresident aliens, were joint beneficiaries of a trust created by the grandfather, the trustee of which was a resident of the United States. There was some contention by the beneficiaries that their interests in the trust were adverse. The court held, however, that their interests were not adverse and that the capital gains of the trust were includable as income of the two beneficiaries.

As to John Amodio it was shown that he had bought some real estate in the United States through agents, had arranged with his agent to acquire and did acquire other real property in the United States, that these properties were managed by local real estate agents who "negotiated or renewed leases, arranged for repairs, collected rents, paid taxes and assessments, and remitted net proceeds." The court held that such activities of a nonresident alien through his agents in the United States constituted engaging in business in the United States. The court, however, said, "In our opinion the real properties owned by Amodio or of which he was a coowner through the trust cannot be regarded as a 'permanent establishment' within the meaning of the convention. * * * The Convention indicates * * * that carrying on business dealings through a broker or independent agent acting in the ordinary course of his business as such does not amount to having a permanent establishment."

4. In this case Johnston was a citizen and resident of Canada and one of two partners in a livestock dealership partnership in Canada. Johnston on behalf of his partnership (W. C. Johnston & Co.) entered into an oral agreement with an Illinois partnership (Geneseo Sales Company) whereunder Johnston agreed to purchase cattle in Canada and to ship such cattle to the Illinois partnership to be sold by it. Profit or loss from the sales of the cattle was to be equally divided between Johnston and the Illinois partnership. The court held that a partnership did in fact exist between the partners of W. C. Johnston & Co. and the Illinois partnership, and that, therefore, under the provisions of section 219 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 219, Johnston by virtue of his membership in the partnership is deemed to have been doing business in the United States. The court then said:

"The petitioner advanced a further argument to the effect that the treaty between the United States and Canada of March 4, 1942, 56 Sat. 1399, prohibits the taxation of petitioner's income here in issue because W. C. Johnston & Co. was a Canadian enterprise as that term is defined in the protocol of the treaty; and, hence, by the terms of the treaty exempt from tax because it had no permanent establishment in the United States. This argument is without merit. We have already indicated that the relationship of the W. C. Johnston & Co. and its partners with the Geneseo Sales Company and its partners was that of a partnership; and by virtue of Geneseo Sales Company's permanent abode in the United States, W. C. Johnston & Co. and its partners are deemed to have had a permanent business or place of business in this country."

rights and powers as a limited partner, he takes part in the control of the business." UPA Sec. 7; Cal.Corp.Code, Sec. 15507.

■ Further, plaintiff argues, a general partner does not have general authority to contract for a limited partner. This is true to the extent that the Uniform Partnership Act provides that "The limited partners shall not be bound by the obligations of the partnership." UPA Sec. 1; Cal.Corp.Code Sec. 15501.

This section must, of course, be read with UPA Sec. 7, Cal.Corp.Code 15507, supra, and further, it should be noted that under UPA Sec. 9, Cal.Corp.Code Sec. 15509, a general partner "shall have all the rights and powers and be subject to all the restrictions * * * of a partner in a partnership without limited partners * * * " with certain specified exceptions not applicable here.

■ Therefore, although a partner does not, because of the statute, bind the limited partner upon the partnership obligations to third parties and creditors, the general partner does have general authority to control and conduct, by making contracts or otherwise, the business of the partnership of which the limited partner is a member and whose assets and profits the limited partner is entitled to share.

■ It may be noted that under certain circumstances the liabilities of a limited partner to the partnership may be enforced by a creditor, or by the partners, for the benefit of creditors. UPA Sec. 17, Cal.Corp.Code Sec. 15517(3) (4).[5]

In the instant matter, there is a written agreement or certificate of limited partnership required by California law. (Ex. A, attached to Plaintiffs' Second Reply Memorandum.) It lists plaintiffs, Transpat and Dostrey, as limited partners and provides that "the character of the business is dealing in beverages, both alcoholic and non-alcoholic, and other products, and the purchase, improvement, lease, rental operation, sale and otherwise dealing in real property and engaging in the transportation business." The amended certificate (Ex. B, supra) adds "and also to render merchandising and accounting advice and services and financial assistance to persons engaged in such businesses."

The certificate describes the location of the partnership, the name and place of residence of all partners, general and limited, describes the term of partnership, capital contributions made and share of profits allocable to each limited partner, and other provisions relating to the rights of the limited partners.

Plaintiff contends that under the law, which we have summarized, the plaintiffs, limited partners in a California partnership, should be considered as doing business through a commission agent, broker or independent agent, rather than as doing business through an agent with general authority to contract for him or as doing business similar to one with a stock of merchandise from which his agent regularly fills orders.

The distinction which the Convention seems to make between an employee or agent with general authority to contract for his employer or principal, on the one hand, and a commission agent, broker, or other independent agent, on the other, is, we believe, merely a statement of the

---

5. § 15517. *"Liability of limited partner to partnership*

\* \* \* \* \* \* \*

"(3) *Waiver or compromise of liability.* The liabilities of a limited partner as set forth in this section can be waived or compromised only by the consent of all members; but a waiver or compromise shall not affect the right of a creditor of a partnership who extended credit or whose claim arose after the filing and before a cancellation or amendment of the certificate, to enforce such liabilities.

"(4) *Liability after rightful return of contribution.* When a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return."

traditional distinction between a general agent and a special agent or independent contractor.

■ A useful definition is contained in 1 Mechem on Agency, section 60 (2d Ed. 1914): "A general agent is one to do all the acts pertaining to a business of a certain kind or at a particular place, or all the acts of a particular class or series * * * An agent * * * who is empowered to transact all the business of his principal of a particular kind or in a particular place would * * * be ordinarily deemed a general agent." Ordinarily, power to act generally in a particular business or a particular course of trade in a business, however limited, would constitute a general agency. Crain v. First National Bank, 114 Ill. 516, 2 N.E. 486 (1885).

■ A special agent is defined as "one authorized to do some particular act or to act upon some particular occasion. He acts usually in accordance with specific instructions or under limitations necessarily implied from the nature of the act to be done." 1 Mechem, supra, section 61.

■ A broker generally means a person engaged for others in the negotiations of contracts relative to property with respect to which he ordinarily has neither possession nor special interest. 1 Mechem, supra, Section 73.

■ An independent agent, or independent contractor, generally means one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of the employer except as to the result of the work. 1 Mechem, supra, Section 40.

The Convention refers, not only to agents, but also to employees who carry on business with either general authority to contract for the employer or principal or who have a stock of merchandise from which the agent or employee regularly fills orders.

The evident intent of the Convention seems to be that the test should be, not entirely whether the employee or agent has power to make contracts with third persons which are binding on the employer or principal, but also whether the employee or agent, who is not a mere broker, commission agent or independent contractor, carries on a regular business for the benefit of the employer or principal, as for example, by merely, but regularly, filling orders from a stock of merchandise.

The statutory provision, UPA Sec. 1; Cal.Corp.Code, Sec. 15501, that a limited partner shall not be bound by the obligations of the partnership,[6] and UPA Sec. 7, Cal.Corp.Code Sec. 15507, providing that a limited partner shall not become liable as a general partner, do not eliminate or affect the broad powers of a general partner, recognized by UPA Sec. 9, Cal.Corp.Code, Sec. 15509, to act for the business benefit of the limited partners so far as the general conduct of the business is concerned and to the financial extent of the limited partner's contribution.

We do not believe that a partner, even a limited partner, who conducts business through the general partners, can be considered as one who merely does business through a broker or special agent.

■ In the State of California, and, indeed, in Canada, a partnership, unlike a corporation, is considered to be not a legal entity, but an association of individuals.[7] Our attention has not been called to any authority to the effect that a limited partnership in this respect is

---

6. § 15501. *"Limited partnership defined; liability of limited partners.* A limited partnership is a partnership formed by two or more persons under the provisions of Section 15502, having as members one or more general partners and one or more limited partners. The limited partners as such shall not be bound by the obligations of the partnership."

7. Appellants contend that the federal tax question of whether the office and assets of the partnership are attributed to the limited partner for the purpose of determining permanent establishment of the limited partner does not depend upon whether state law treats the partnership as an association of individuals or as a separate legal entity. They contend that

any different from a general partnership. Reed v. Industrial Accident Commission, 10 Cal.2d 191, 73 P.2d 1212, 114 A. L.R. 720 (1937); also, No. 630 v. MNR (1959) Canadian Tax Appeal Board, D TC, 300, 302. [13 CCH Dominion Tax Cases 300 (1959)].[8]

Consistently with this concept, both the United States and Canada look, not to the partnership as such, but to the distributive income of the individual partners for income tax purposes. (See, Sec. 701, I.R.C.1954, 26 U.S.C.A. § 701; also, Sec. 6 of the Canadian Income Tax Act.)

To say that for practical purposes a limited partner in a partnership is no different from an investing shareholder in a corporation or from the corporate owner of a subsidiary corporation, overlooks the fact that in these latter instances the corporate entities are taxed for and pay income taxes while a partnership, whether limited or general, does not.

Under this concept of partnership as an association of individuals, it follows that each partner, whether general or limited has an interest as such in the assets and the profits of the partnership, including the physical plant or offices at which the partnership conducts its business, so that the office or permanent establishment of the partnership is in law, the office of each of the partners —whether general or limited. (See: No. 630 v. MNR, supra.) [9]

we should look to federal law to determine income tax characteristics given to partnerships.

However, the lack of value of such an attempt is demonstrated by the statement in appellant's brief reading "Appellants do not deny that a partnership is treated as an association of individuals, rather than as an entity, for many purposes associated with the placement of liability for the income tax on the individuals rather than on the entity. But the income tax law has avoided the aggregate-entity conflict. The 1954 code 'adopts neither theory exclusively. Instead it adopts the criterion of the desirable result and applies whichever theory will produce that result.' Willis, Handbook of Partnership Taxation (1957), p. 12."

8. In this case, decided by the Canadian Tax Appeal Board, an American corporation entered into a joint venture agreement with other corporations to do tunnel and other construction work in Ontario, Canada. The Board said:

"During the period of some years that this was being accomplished appellant regarded itself as simply an American tax based corporation that was away from home, so to speak, its head office being in the state of New York. While a member, for the time being, of a partnership functioning as such in Canada, it considered that the work being done was that of the partnership as an identifiable entity and not of appellant as a corporation."

The Board, after referring to the tax Convention between United States and Canada of 1942, stated:

"The appellant took the position that whatever moneys it earned in Canada * * * were not subject to income tax. In addition to the facts already set out, there was the allegation by the appellant that it had no 'permanent establishment' in Canada at any time and was and had always remained a nonresident corporation."

The Board held that the partnership was not a separate entity and that the "office premises of the partners collectively, were also the office premises of any one partner." The Board then referred to the case of W. C. Johnston v. Commissioner of Internal Revenue, supra, and stated:

"There is a recent American decision, which, while not authoritative in this country, of course, is nevertheless persuasive."

After reciting the facts of Johnston the Board stated:

"It was held * * * that as the Geneseo Sales Company admittedly had its permanent office in the U. S. A. and W. C. Johnston & Co. were in partnership with the American firm, Johnston & Co. must be deemed to have had a permanent place of business in the State of Illinois also."

9. Counsel rely on the case of Commissioner of Internal Revenue v. Consolidated Premium Ores, Ltd., 265 F.2d 320 (6th Cir. 1959), to support their claim that appellants in this case had no "permanent establishment". We think the case is not apposite. Consolidated Premium was a Canadian corporation and the question to be determined was whether that fact justified a holding that it had a per-

██ The UPA does not purport to create a new concept of separate legal identities as between the limited partner and the partnership, nor does it purport to create for limited partnership in this respect the separate legal entity concept applicable as between shareholder and corporation.

██ So long as a limited partner, along with the general partners, constitute the partnership, it will have to be recognized that the general partners are the general agents of the limited partners for the general purpose of conducting the business—subject only to the statutory exemption of limited partners from direct obligation to creditors beyond their stated financial commitment—and that all the partners have an interest in the partnership assets, including its office.[10]

██ We are of the opinion, therefore, that the general partner of a California limited partnership is a general agent of the limited partner within the meaning and intent of the Tax Convention, and that, therefore, the office of the limited partnership is in effect the permanent establishment of the limited partner within the United States.

Upon the basis of the portions of the foregoing opinion set out above as supplemented by our footnotes the judgment of the district court is affirmed.

manent establishment in the United States. Consolidated was licensed to do business in Ohio and had an office there; however, no assets were in Ohio and no business was transacted. The trial court stated:

"Premium had no real office in the United States; no officers, directors or employees here; no bank account or books of account; no telephone listing; its name did not appear on any door or office; it had no employee or agent established here who had 'general authority to contract for his employer or principal,' such authorized agent being one of the definitive tests of a 'permanent establishment' under the treaty."

Upon the basis of the facts shown, the district court found that no permanent establishment had been proven. The Court of Appeals, affirming, held that this action of the district court was not clearly erroneous. No question was raised or involved as to whether Consolidated Premium was a member in a general or limited American partnership, or as to what the result would have been if it were.

10. Inasmuch as the phrase "permanent establishment" appears in the Canadian Tax Convention, which is applicable to both Canada and the United States, it would be a desirable, although not necessary, result if the courts of each country gave it the same meaning. The decision of the Canadian Tax Appeal Board in No. 630 v. MNR, supra, and the decision of the United States Tax Court in W. C. Johnston, supra, indicate that this has been done.