ROBERT UNGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Unger v. Commissioner
Docket No. 16332-88
United States Tax Court
T.C. Memo 1990-15; 1990 Tax Ct. Memo LEXIS 15; 58 T.C.M. (CCH) 1157; T.C.M. (RIA) 90015; January 9, 1990
William E. Halmkin, for the petitioner. Randall P. Andreozzi, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioner's 1984 Federal income tax in the amount of $ 55,879, and an addition to tax for that year under section 6661(a)[1] in the amount of $ 13,969.75. *18 The issues presented for decision are: (1) whether petitioner's distributive share of a limited partnership's income is exempt from taxation by virtue of the 1942 Income Tax Convention between the United States and Canada; and (2) if that income is not exempt, whether petitioner is subject to the addition to tax under section 6661(a) for making a substantial understatement of tax. FINDINGS OF FACT This case was submitted fully stipulated under Rule 122. The Stipulation of Facts and attached exhibits are incorporated by reference. Petitioner, Robert Unger, was a resident of Salt Spring, British Columbia, Canada, at the time the petition in this case was filed. Petitioner is a dentist who during 1984 owned a limited partnership interest in the Charles River Park "C" Company (CRPC), a Massachusetts limited partnership. CRPC was formed on October 23, 1964, when a Partnership Certificate was filed with the state of Massachusetts. CRPC's purposes are to construct, develop, and manage residential housing projects within the Commonwealth of Massachusetts. During the year at issue, CRPC sold certain real estate located in Boston, Massachusetts. The long-term capital gain resulting *19 from that sale was distributed among CRPC's seven general partners and 22 limited partners. Petitioner's distributive share of that sale's gain as a limited partner of CRPC was $ 289,260. Petitioner filed a United States Non-Resident Alien Income Tax Return, Form 1040NR, for the 1984 taxable year. That return did not include as taxable income petitioner's distributive share of CRPC's long-term capital gain from the sale of real estate. In response to the following questions posed by the Form 1040NR, petitioner provided the following information: L) If you claimed the benefits of a U.S. income tax treaty with a foreign country, please give the following information: Country - Canada
Kind and amount of exempt income you claim. Also identify the applicable tax treaty article: for 1984 - Schedule of capital gains under Article VIII * * * Were you subject to tax in that country on any of the income you claim is entitled to the treaty benefits? Yes. Did you have a permanent establishment or fixed base (as defined by the tax treaty) in the U.S. at any time during 1984? No. On a handwritten statement attached to the Form 1040NR, petitioner listed, *20 among other things, the rental income and section 1231 gain he realized in relation to his investment in CRPC during 1984. At the bottom of that statement petitioner wrote, "Capital gains are exempt under Article VIII of the U.S.-Canada Tax Treaty." OPINION The first issue for decision is whether petitioner's distributive share of CRPC's income is taxable in the United States. Section 871(b)(1) provides that nonresident alien individuals engaging in a trade or business within the United States are taxable in this country on the income effectively connected with the conduct of that trade or business. Section 875(1) provides: a nonresident alien individual * * * shall be considered as being in a trade or business within the United States if the partnership of which such individual * * * is a member is so engaged * * *. This is so whether the nonresident alien individual is a general or limited partner. See Vitale v. Commissioner, 72 T.C. 386 (1979). Thus, petitioner is taxable on his distributive share of the gain realized by CRPC unless this income is exempt from *21 taxation under the Convention and Protocol between the United States of America and Canada respecting double taxation (the Convention), Income Tax Convention, March 4, 1942, United States - Canada, 56 Stat. 1399, T.S. No. 983. See de Amodio v. Commissioner, 34 T.C. 894 (1960), affd. 299 F.2d 623 (3d Cir. 1962). Petitioner contends his distributive share of the gains realized by CRPC are exempt from taxation, not under Article VIII of the Convention as asserted on his Form 1040NR, [2] but under Article I of the Convention. Article I generally provides an enterprise of Canada is not subject to taxation by the United States with respect to its industrial and commercial profits except with respect to those profits allocable under the Convention to its "permanent establishment" in the United States. Pursuant to the Convention's first Protocol: (b) the term "enterprise" includes every form of undertaking, whether carried on by an individual, partnership, corporation or any other entity; * * * (f) the term "permanent establishment" includes branches, mines *22 and oil wells, farms, timber lands, plantations, factories, workshops, warehouses, offices, agencies and other fixed places of business of an enterprise, but does not include a subsidiary corporation. When an enterprise of one of the contracting States carries on business in the other contracting State through an employee or agent established there, who has general authority to contract for his employer or principal * * *, such enterprise shall be deemed to have a permanent establishment in the latter State. The fact that an enterprise of one of the contracting States has business dealings in the *23 other contracting State through a commission agent, broker or other independent agent * * * shall not be held to mean that such enterprise has a permanent establishment in the latter State. [56 Stat. 1407-1408.] Respondent asserts petitioner has a permanent establishment in the United States and, therefore, is subject to taxation in this country pursuant to the Convention. To support his position, respondent cites Donroy, Ltd. v. United States, 301 F.2d 200 (9th Cir. 1962). Petitioner argues Donroy is factually distinguishable from the case at hand. If we find Donroy factually indistinguishable, petitioner argues Donroy should be disregarded as it is based upon a purportedly archaic interpretation of the law governing limited partnerships. Donroy involved Canadian corporations which were limited partners in a Californian limited partnership. The issue presented was whether the Canadian corporate limited partners had a "permanent establishment" in the United States within the meaning of the Convention such that the corporations' distributive share of the Californian limited partnership's income was taxable in the United States. The Court *24 of Appeals for the Ninth Circuit held: In the State of California, and, indeed, in Canada, a partnership, unlike a corporation, is considered to be not a legal entity, but an association of individuals. * * * * * * Under this concept of partnership as an association of individuals, it follows that each partner, whether general or limited has an interest as such in the assets and the profits of the partnership, including the physical plant or offices at which the partnership conducts its business, so that the office or permanent establishment of the partnership is in law, the office of each of the partners -- whether general or limited. * * * * * * So long as a limited partner, along with the general partners, constitute the partnership, it will have to be recognized that the general partners are the general agents of the limited partners for the general purpose of conducting the business -- subject only to the statutory exemption of limited partners from direct obligation to creditors *25 beyond their stated financial commitment -- and that all the partners have an interest in the partnership assets, including its office. * * * therefore, the office of the limited partnership is in effect the permanent establishment of the limited partner within the United States. [Donroy v. United States, supra at 206-208, emphasis added and footnotes refs. omitted.] Petitioner's argument that Donroy should be disregarded because it is factually distinguishable from the case at hand lacks merit. The facts upon which petitioner relies as distinguishing are inconsequential. Further, the Ninth Circuit's holding -- that the office or permanent establishment of a partnership is the office of each of its partners, whether general or limited -- is a matter of law. Accordingly, we hold Donroy should not be disregarded on the basis of its facts. Petitioner next argues we should disregard Donroy because it "represents an archaic view of the law of partnerships which is simply inapplicable to todays' [sic] economic realities." Specifically, petitioner finds fault in the following Donroy holdings: (1) a general partner of a limited partnership *26 acts as the limited partners' general agent when conducting business on the partnership's behalf, and (2) a limited partner owns an undivided interest in the assets of the partnership. Petitioner posits a more modern view of limited partnerships has evolved under which: (1) general partners of a limited partnership are not viewed as general agents of the limited partners; and (2) limited partners are not considered to have an undivided interest in the assets of the partnership but rather are considered to have only an interest in partnership profits. In support of his position, petitioner cites several cases purportedly espousing this "modern" view of limited partnership law. Petitioner cites Wroblewski v. Brucher, 550 F. Supp. 742 (W.D. Okla. 1982), as a case which "sharply criticized" Donroy. Wroblewski decided whether, for purposes of diversity jurisdiction, the citizenship of a defendant partnership's limited partners should be considered. In deciding the issue the District Court held, contrary to Donroy, a limited partner of a limited partnership created under California's version of the Uniform Limited Partnership Act does not have any interest *27 or right in the assets, properties, or rights of the partnership. Based on that, the District Court reasoned a limited partner could not have any interest in defending the partnership's rights, and the citizenship of a limited partner should not be considered for purposes of determining diversity jurisdiction. In so holding, the Wroblewski court acknowledged the contrary holding in Donroy but stated Donroy was not persuasive authority on the issue. For that reason and that reason only, the court in Wroblewski chose not to follow Donroy. Petitioner also cites Evans v. Galardi, 16 Cal. 3d 300, 546 P.2d 313 (1976), contending the California Supreme Court in that case declined to follow Donroy because that court found the Ninth Circuit to have misconstrued California law on the subject of limited partners when deciding Donroy. Evans decided the issue of whether the assets of a limited partnership may be levied upon to satisfy a judgment against a partnership's limited partners in their individual capacities. It was held, again contrary to Donroy, a limited partner had no interest in the partnership property by virtue of his status *28 as a limited partner. For that reason the California Supreme Court ruled the assets of the limited partnership were not available to satisfy the judgment against the limited partners in their individual capacities. The court in Evans held Donroy was not persuasive authority because it was decided for purposes of interpreting a tax convention, and not for purposes of interpreting and applying state law. The California Supreme Court therefore disregarded Donroy. Evans v. Galardi, 546 P.2d at 319-320 n.11. Petitioner also cites Estate of Meyer v. Commissioner, 58 T.C. 311 (1972), affd. per curiam 503 F.2d 556 (9th Cir. 1974), contending the Ninth Circuit in that case rejected its own rationale in Donroy. In Estate of Meyer, a father and son who were general partners in a partnership exchanged their partnership interests for a second partnership in which the son was a general partner and the father was a limited partner. The issue was whether those exchanges were of like kind property within the meaning of section 1031(a). The Ninth Circuit Court of Appeals held the father did not make a like kind exchange within *29 the meaning of that section. Although in so holding the court recognized the differences between a general partnership and a limited partnership interest, the Ninth Circuit did not reject the rationale of Donroy. In fact the Ninth Circuit cited Donroy in Estate of Meyer as authority for the position that a limited partner may not participate in the running of the partnership business and that a limited partner's liability is generally limited to the amount of his investment. Estate of Meyer v. Commissioner, 503 F.2d at 558. We are left unpersuaded by the cases relied upon by petitioner. Although each of those cases contains language supportive of an interpretation of the law governing limited partnerships contrary to the interpretation adopted in Donroy, the issues in the cases relied upon by petitioner were not the same as the issue at bar. Accordingly, we do not consider those cases persuasive authority for the issue here presented for decision. The interpretation of the law of partnership which petitioner alleges is more "modern" is not a recently evolved interpretation. Rather it is merely a competing view which places more emphasis *30 on the entity theory of partnership than on the aggregate theory of partnership. The entity theory holds the nature of a partnership to be such that the partnership is a distinct legal entity separate from its partners. The aggregate theory on the other hand considers the partners of a partnership as not forming a collective whole. Rather the partnership is viewed as merely an aggregate of the individual partners of which it is comprised. A resolution of the dispute concerning whether the entity theory or aggregate theory of partnership should be applied for all purposes has not been reached. The character attributed to a partnership varies from case to case, sometimes even within jurisdictions, often depending on the issue to be decided. Indeed, even under the Internal Revenue Code, the two theories are both applied, albeit in different contexts, depending upon the result desired by Congress. Some examples of the entity theory in the Internal Revenue Code are: section 702(b), character of income, gain, loss, deductions, and credits to a partnership are determined at the partnership *31 level; section 703(b), elections are made by the partnership; section 706(b), taxable year of a partnership is determined as if the partnership were a taxpayer; section 707, partners may have transactions with the partnership in other than a partner capacity; section 708, partnership continues despite transfers of interests by a partner unless more than a 50 percent interest in capital and profits is transferred in 12 months; section 741, sale of an interest in a partnership results in capital gain or loss, with certain exceptions; and section 6031, partnership files a return. Despite these applications of the entity theory of partnership, however, the tax on a partnership's income and gains is applied at the individual partner level through the use of the aggregate theory. Section 701 provides: A partnership as such shall not be subject to the income tax imposed in this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities. *32 This characterization of a partnership as being merely an association of individuals, for purposes of determining the actual tax to be imposed on a partnership's industrial and commercial profits, is perhaps the most important characteristic of a partnership for Federal income tax purposes. Although the concept results in the misnomer for a partnership as being a "pass-through entity," the result is that an association of individuals is permitted to conduct business through the guise of an entity with the actual tax consequences being ultimately determined and applied at the individual level. Because the actual taxation of a partnership is achieved through the aggregate theory of partnership, we hold the aggregate theory of partnership to also be applicable when determining whether a partner has a "permanent establishment" in the United States within the meaning of the Convention. Accordingly, for purposes of applying the Convention, we hold a partner in a limited partnership owns an undivided interest in the assets of the partnership so that the partner has a permanent establishment *33 in the United States if the partnership has a permanent establishment in this country. This applies regardless of whether the partner is a limited or general partner. In the case at hand, CRPC has a permanent establishment in the United States by virtue of its offices in Boston and its general partners' acting as its general agents. Because CRPC has a permanent establishment in the United States, so too does petitioner. Accordingly, petitioner's distributive share of CRPC's long-term capital gain is taxable in this country. The next issue for decision is whether petitioner is subject to the addition to tax under section 6661(a). That section imposes an addition to tax if there is a substantial understatement of income tax. An understatement occurs where the amount shown as tax on a return is less than the amount required to be shown. Sec. 6661(b)(2). An understatement of tax is substantial if it exceeds 10 percent of the amount of tax required to be shown on the return for the taxable year or $ 5,000, whichever is greater. Sec. 6661(b)(1). *34 The amount of the addition to tax imposed by section 6661(a) equals 25 percent of any underpayment attributable to the substantial understatement. However, where an item is not attributable to a tax shelter [3] the amount of understatement subject to the addition to tax is reduced by such item if the taxpayer's treatment of the item was based on substantial authority, sec. 6662(b)(2)(B)(i), or if the taxpayer adequately disclosed on the return or in a statement attached to the return the relevant facts affecting such item's tax treatment, sec. 6661(b)(2)(B)(ii). Section 6661(c) further provides the Secretary with the authority to waive all or any part of the substantial understatement addition to tax where the taxpayer can show there was reasonable cause for the understatement (or part thereof) and the taxpayer acted in good faith. Because petitioner failed to report as taxable income his distributive share of CRPC's gains -- gains *35 which are taxable in this country -- it is clear petitioner made a substantial understatement of tax on his Form 1040NR for 1984. Petitioner contends any addition to tax for that understatement should be reduced in accordance with sections 6661(b)(2)(B)(i) or 6661(b)(2)(B)(ii), or waived under section 6661(c). Respondent disagrees. Because we agree with petitioner with respect to section 6661(b)(2)(B)(i), we need not discuss sections 6661(b)(2)(B)(ii) or 6661(c). For purposes of section 6661(b)(2)(B)(i), substantial authority for the tax treatment of an item exists "only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs.
The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter than a reasonable basis standard (the standard which, in general, will prevent imposition of the penalty under section 6653(a), *36 relating to negligence or intentional disregard of rules and regulations). Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard. [Sec. 1.6661-3(a)(2), Income Tax Regs.] In relation to section 6661(b)(2)(B)(i) court cases are considered authority. Sec. 1.6661-3(b)(2), Income Tax Regs. Further, the relative weight given particular authorities concerning the tax treatment of an item is determined through the same analysis a court would normally apply in evaluating those authorities. Sec. 1.6661-3(b)(3), Income Tax Regs.
Petitioner asserts his treatment of the item in question was based upon substantial authority. In support of his position, petitioner again relies upon Wroblewski, Evans, and Estate of Meyer as the substantial authority supporting his treatment of his distributive share of CRPC's long-term capital gains. Although we *37 choose not to follow the cases relied upon by petitioner for purposes of determining whether the entity or aggregate theory of partnership should be applied in interpreting the Convention, we find those cases to be "substantial authority" supporting petitioner's position within the meaning of section 6661(b)(2)(B)(i). The court in Donroy based its interpretation of the Convention upon an application of the aggregate theory of partnership. Subsequent cases -- i.e., Wroblewski, Evans, and Estate of Meyer -- discussed Donroy and disregarded that court's application of the aggregate theory of partnership. Although petitioner's position -- that an interpretation different from that in Donroy should be given the Convention -- was not accepted by this Court, we find the authority in support of disregarding Donroy to be substantial authority within the meaning of section 1.6661-3(a)(2), Income Tax Regs. Accordingly, we hold the amount of petitioner's understatement shall be reduced as provided by section 6661(b)(2)(B)(i) for purposes of determining the addition to tax to which petitioner is subject under section 6661(a). To reflect *38 the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Article VIII of the Convention exempts from taxation gains derived in this country from the sale or exchange of capital assets by a resident of Canada, if the Canadian resident has no permanent establishment in the United States. Petitioner concedes the property sold by CRPC was not, within the meaning of section 1221, a capital asset of the limited partnership. Accordingly, petitioner concedes the gain in question is not exempt from taxation in this country by virtue of Article VIII.↩
3. See sec. 6661(b)(2)(C)(i). Petitioner's investment in Charles River Park "C" Company does not constitute a "tax shelter" as defined for purposes of section 6661. See sec. 6661(b)(2)(C)(ii)↩.