Robert UNGER, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 90–1231.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1991.

Decided June 28, 1991.

William E. Halmkin, Boston, Mass., for appellant.

Bridget M. Rowan, Atty., Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, and Robert S.

Pomerance, Attys., Dept. of Justice, were on the brief, for appellee.

John A. Dudeck, Jr., Atty., Dept. of Justice, also entered an appearance, Washington, D.C., for appellee.

Before SILBERMAN, BUCKLEY and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

We are asked to determine whether the United States–Canada Income Tax Convention of 1942 permits the United States to tax a Canadian resident's distributable share of capital gain realized by a Massachusetts partnership in which he is a limited partner. On the settled authority of *Donroy, Ltd. v. United States*, 301 F.2d 200 (9th Cir.1962), we hold that it does.

## I. BACKGROUND

In 1984, the Charles River Park "C" Company ("Company"), a Massachusetts limited partnership, sold real estate in Boston, Massachusetts. The sale produced a long-term capital gain that was distributed among the Company's seven general and twenty-two limited partners. Among those limited partners was Robert Unger, a resident of British Columbia, Canada. His share of the gain totalled $289,260.

Mr. Unger did not include this sum as taxable income on his 1984 United States Nonresident Alien Income Tax Return. Instead, he indicated that as he had no "permanent establishment" in the United States, this income was exempt from taxation by the United States under the Tax Convention. The Internal Revenue Service disagreed. It calculated a deficiency of $55,879 and assessed a penalty of $13,-969.75 for substantial understatement of tax.

Mr. Unger appealed to the United States Tax Court, which agreed with the IRS. It noted that Article I of the Convention exempts the industrial and commercial profits of a Canadian enterprise from taxation by the United States, except for profits alloca-

ble to the enterprise's "permanent establishment" in the United States. The Tax Court held that Mr. Unger had such an establishment by virtue of his interest in the limited partnership. Adopting *Donroy*'s view that a partnership is not legally a separate entity but rather the aggregate of the individual partners, the court reasoned that as Mr. Unger held an individual interest in the assets of the partnership, and as the partnership maintained a permanent office in Boston, Mr. Unger had a permanent establishment in the United States. *See Unger v. Commissioner*, No. 16332–88, mem. op. at 7–13 (T.C. Jan. 9, 1990). Recognizing, however, the substantial authority for the competing view that a partnership is a separate entity, the court reduced the penalty. *See id.* at 13–16; 26 U.S.C. § 6661(b)(2)(B)(i) (1988).

On appeal to this court, Mr. Unger argues that his investment in the limited partnership is a passive one and cannot result in a permanent establishment in this country. As a consequence, he contends, the United States may not tax his share of the partnership income.

## II. DISCUSSION

Article I of the Tax Convention provides in relevant part:

> An enterprise of one of the contracting States is not subject to taxation by the other contracting State in respect of its industrial and commercial profits except in respect of such profits allocable in accordance with the Articles of this Convention to its permanent establishment in the latter State.

United States–Canada Income Tax Convention and Protocol, Mar. 4, 1942, 56 Stat. 1399, art. I. As defined in the Convention's first Protocol, "the term 'enterprise' includes every form of undertaking, whether carried on by an individual, partnership, corporation or any other entity," Protocol § 3(b); "the term 'permanent establishment' includes branches, ... offices, agencies and other fixed places of business of an enterprise," *id.* § 3(f).

The question, then, turns on the nature of a limited partnership. If Mr. Unger's

interest as a limited partner in the Company gives him an interest in its offices, he has a permanent establishment in Boston that makes his share of the Company's profits taxable by the United States. If he has no permanent establishment here, this income is exempt.

Two views have long competed regarding the basic nature of a partnership. The "aggregate theory" considers a partnership to be no more than an aggregation of individual partners. Under this theory, each partner has an interest in the property of the partnership; thus, Mr. Unger would be deemed to have a permanent establishment in the United States. The "entity theory" characterizes a partnership as a separate entity; under this view, the offices would be attributable to the partnership but not the partners, and Mr. Unger would not be deemed to have a permanent establishment in this country. Courts remain ambivalent in their treatment of partnerships, dealing with them as aggregates for certain purposes and as entities for others. *See generally* 1 A. Bromberg & L. Ribstein, *Partnership* § 1.03 (1988).

This ambivalence is reflected in the Uniform Partnership Act, which Massachusetts has adopted. *See* Mass.Gen.Laws Ann. ch. 108A (West 1990). Several provisions suggest that a partnership is an aggregate of its members: for example, the definition of partnership as an "association of two or more persons" to carry on as co-owners a business for profit, *id.* ch. 108A, § 6, that dissolves when any partner terminates his association, *id.* § 29, and the provision that partners rather than the specific partnership own partnership property, *id.* § 25. Other sections treat a partnership as a discrete entity. *See, e.g., id.* § 8(3) (partnership can hold title to property); *id.* § 9 (partners are agents of the partnership). Indeed, the Uniform Partnership Act's failure to resolve the tensions between the two theories has been the subject of comment. *See, e.g.,* Jensen, *Is a Partnership Under the Uniform Partnership Act an Aggregate or an Entity?*, 16 Vand.L.Rev. 377 (1963).

The Internal Revenue Code also treats partnerships as aggregates for some purposes and as separate entities for others. A partnership must calculate income as a discrete entity. *See* 26 U.S.C. § 703 (1988). The obligation to pay taxes, however, passes through the partnership to the individual partners. *Id.* §§ 701, 702; *United States v. Basye*, 410 U.S. 441, 448, 93 S.Ct. 1080, 1085, 35 L.Ed.2d 412 (1973) (characterizing partnership as a "conduit" through which taxpaying obligation passes). The conflict between the aggregate and the entity views, then, carries over to the realm of federal taxation. *See* Pusey, *The Partnership as an "Entity": Implications of* Basye, 54 Taxes 143, 158 (1976) ("The entity-aggregate conflict has been, and will continue to be, one of the most controversial areas of partnership taxation.").

Mr. Unger argues that whatever the merits of the aggregate theory where ordinary partnerships are concerned, it should not be applied to limited partnerships. He maintains that a limited partner should be likened to (and taxed the same way as) a corporate shareholder, as both risk only the capital they have chosen to put at stake. In contrast, a general partner has full personal liability for partnership debts. *See* Mass.Gen.Laws Ann. ch. 109, §§ 19(a), 24. Moreover, like a shareholder, a limited partner may not participate in the active management of the enterprise; indeed, if he should, he will lose his protected status and become fully liable as a general partner. *See id.* § 19(a); *see also id.* § 19(d). Mr. Unger also points out that the distinctions between general and limited partnerships can be dispositive. Courts have chosen, for example, to protect partnership assets from execution by judgment creditors of a limited partner, *see Evans v. Galardi*, 16 Cal.3d 300, 128 Cal.Rptr. 25, 546 P.2d 313 (1976) (in bank), and to ignore the citizenship of limited partners, but not that of general partners, in determining diversity jurisdiction, *see Wroblewski v. Brucher*, 550 F.Supp. 742, 751 (W.D.Okla. 1982).

Mr. Unger makes a number of valid observations about the intricacies and inconsistencies that exist in the law of partner-

ship as it has evolved in various jurisdictions, but he fails to provide any persuasive reason, based on either Massachusetts partnership law or the facts of this case, for us to disregard what has come to be viewed as settled law under the Tax Convention.

In 1962, in *Donroy*, the Ninth Circuit was called upon to deal with an almost identical case. It involved Canadian corporations that were limited partners of two California partnerships whose principal offices were located in San Francisco. The court examined the relevant California partnership law and concluded that the aggregate theory was to be applied in determining whether the Canadian partners had a permanent establishment in the United States. It concluded that "the office or permanent establishment of the partnership is in law, the office of each of the partners—whether general or limited." 301 F.2d at 207. The court also noted that "the United States and Canada look, not to the partnership as such, but to the distributive income of the individual partners for income tax purposes." *Id.* (citing section 701 of the Internal Revenue Code, 26 U.S.C. § 701, and section 6 of the Canadian Income Tax Act). Thus the application of the aggregate theory in *Donroy* was consistent with the manner in which partnership income was actually taxed by both parties to the Convention.

While *Donroy* applied the Uniform Acts as adopted in California, Massachusetts law parallels that of California in the relevant respects. *Compare* Mass.Gen.Laws Ann. ch. 108A, § 6(1) (West 1990) (defining partnership) *with* Cal.Corp.Code § 15006(1) (West 1977) (same); Mass.Gen.Laws Ann. ch. 108A, § 6(2) ("[T]his chapter shall apply to limited partnerships except in so far as the statutes relating to such partnerships are inconsistent herewith.") *with* Cal.Corp. Code § 15006(2) (same); Mass.Gen.Laws Ann. ch. 108A, § 25 (providing that partners own specific partnership property as tenants in partnership) *with* Cal.Corp.Code § 15025 (same); Mass.Gen.Laws Ann. ch. 108A, § 9 (establishing that partners are the agents of the partnership) *with* Cal. Corp.Code § 15009 (same). Similarly, both

jurisdictions have adopted versions of the Uniform Limited Partnership Act. *Compare* Mass.Gen.Laws Ann. ch. 109, § 19 (restricting a limited partner's liability to the extent of his contribution) *with* Cal. Corp.Code § 15507 (same); Mass.Gen.Laws Ann. ch. 109, § 19(a), (d) (providing that participation in control of the business makes a limited partner fully liable) *with* Cal.Corp.Code § 15507(a) (same).

Although Mr. Unger attempts to draw factual distinctions between the two cases, we find no material differences between them. Mr. Unger chose limited partnership interest as a form of passive investment, and asserts that the Canadian corporations in *Donroy* became limited partners in California limited partnerships in order to expand their business. This assertion apparently rests on statements the district court mentioned as issues for future litigation, *see Donroy, Ltd. v. United States,* 196 F.Supp. 54, 59–60 (N.D.Cal.1961), *aff'd,* 301 F.2d 200 (9th Cir.1962), and on the Canadian partners' compliance with California's rule that a limited partnership will not be licensed as a liquor wholesaler unless each of the limited partners is qualified to transact business in California, *see id.* at 60; 301 F.2d at 202–03. The requirement applied regardless of whether the limited partners actually engaged in the conduct of business. *See* 301 F.2d at 203. These slim reeds cannot support a conclusion that these limited partners were so actively involved in the conduct of business as to make *Donroy* inapplicable here.

As the Tax Court noted, the factual distinctions between these cases are inconsequential. *Unger,* mem. op. at 7. Whatever their reasons, both Mr. Unger and the Canadian limited partners in *Donroy* participated in the same form of business organization; and *Donroy* held that, as a matter of law, it was the ownership of a limited partnership interest that resulted in a permanent establishment in the United States. As Mr. Unger has failed to cite any legal authority or factual differences that would require a contrary conclusion, we find that *Donroy* is dispositive of this case; and we do so for reasons that go beyond the re-

spect that one circuit will normally accord the decisions of another.

For many years, *Donroy* and the principles it expresses have guided the Internal Revenue Service. *See, e.g.*, Rev.Rul. 91–32, 1991–20 I.R.B. 20; Rev.Rul. 90–80, 1990–39 I.R.B. 49; Rev.Rul. 85–60, 1985–1 C.B. 187; Gen.Couns.Mem. 38,201 (Dec. 14, 1979); Priv.Ltr.Rul. 5412105720A (Dec. 10, 1954); *see also* W. McKee, W. Nelson & R. Whitmire, 1*Federal Taxation of Partnerships and Partners* ¶ 9.03[4][a] (2d ed. 1990). Moreover, Canadian tax authorities have placed a similar interpretation on the Convention as it applies to the taxation in Canada of an American investor's interest in a Canadian partnership. *See, e.g., No. 630 v. Minister of National Revenue*, 13 D.T.C. 300, 302 (Can.Tax App.Bd.1959).

Thus, a generation of investors on each side of the border has been on notice of the tax consequences of an investment in a limited partnership that is organized and has a permanent office in the other country. Given the desideratum of a uniform administration of federal tax laws, courts should be reluctant to disturb such long-established expectations without good cause. *See, e.g., Keasler v. United States*, 766 F.2d 1227, 1233 (8th Cir.1985) ("[U]niformity of decision among the circuits is vitally important on issues concerning the administration of tax laws. Thus, the tax decisions of other circuits should be followed unless they are demonstrably erroneous or there appear cogent reasons for rejecting them." (citations and internal quotes omitted)).

As we conclude that Mr. Unger had a permanent establishment by virtue of his interest in the partnership offices, we do not consider the Commission's alternative argument that an establishment arose because the general partners were his agents within the meaning of the Convention. Nor do we reach the Commissioner's argument, raised for the first time on appeal, that this case is not governed by the Convention because it involves the taxation by the United States of income derived by an American partnership from the conduct of domestic business.

## III. CONCLUSION

We hold that as a result of his limited partnership interest in the Company, Mr. Unger had a permanent establishment in the United States within the meaning of the United States–Canada Income Tax Convention. As a consequence, his share of the partnership gains is taxable by the United States. The Tax Court's decision is therefore

*AFFIRMED.*