Ed Krist v. Commissioner. Florine Krist v. Commissioner.
Krist v. Commissioner
Docket Nos. 28970, 28971.
United States Tax Court
1953 Tax Ct. Memo LEXIS 178; 12 T.C.M. (CCH) 801; T.C.M. (RIA) 53247; July 8, 1953
*178 Petitioner and his copartner sold their respective equal interests in a partnership to a corporation. Among partnership holdings transferred were installment obligations on properties sold to customers in the ordinary course of partnership business, which had an unrealized profit value. 1. Held, under Sec. 44 (d) of the Internal Revenue Code, the partnership received additional ordinary income in the amount of the unrealized profit value of the installment obligations transferred. *179 2. Held, further, petitioner's remaining gain on the sale, represented by his equal share of the difference in the unrealized profit value of the installment obligations and the total sales price received by the partners, is a long-term capital gain under Sec. 117 of the Internal Revenue Code. Arthur B. Willis, Esq., for the petitioners. Charles H. Chase, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax for the calendar year 1944 of $43,406.44 for Ed Krist (hereinafter referred to as the petitioner) and $43,406.46 for Florine Krist, his wife. The issues to be determined are: (1) whether petitioner sold his interest in a partnership and is entitled to accord capitalgains *180 treatment to the profit therefrom; and (2) whether installment obligations owned by the partnership were "distributed, transmitted, sold, or otherwise disposed of" so as to require a determination of gain or loss under section 44 (d) of the Internal Revenue Code. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner and Florine Krist were husband and wife during the taxable year in question, residing in Los Angeles, California. They filed separate returns for the calendar year 1944 with the collector of internal revenue for the sixth district of California, at Los Angeles. On or about October 1, 1939, petitioner and one Morris Greenspun formed a partnership known as Ed Krist Company (hereinafter referred to as the partnership). The purpose of the partnership was to purchase and subdivide real estate and to construct homes for sale thereon. Its business was carried on under an oral agreement by which profits and losses were divided equally between petitioner and Morris Greenspun. The partnership elected to report gains on sales of houses it built on the installment basis, pursuant *181 to the provisions of section 44 of the Internal Revenue Code. This practice was continued until August 19, 1944. On January 11, 1943, Morris Greenspun sold his entire interest in the partnership to one William A. Blakley, who, with petitioner, thereafter continued to conduct the business as before. On July 7, 1944, the Ed Krist Company (hereinafter referred to as the Corporation) was organized under the laws of the State of California. On July 19, 1944, it issued capital stock of $100 par value as follows: Petitioner (Ed Krist)
500 shares
William A. Blakley
250 shares
Otis A. Brightwell, Jr.
250 shares
On August 19, 1944, petitioner and William A. Blakley signed an Agreement of Sale with the Corporation, which provided, in part, as follows: "WHEREAS, it is the desire of the said Ed Krist Company, a corporation, to buy all interests in said business regardless of how it may now be held or described;" The partners agreed to sell for the sum of $427,839.40 "* * * all of the property, real, personal and/or mixed, and every interest of every kind whatsoever held or owned by the said Ed Krist and Wm. A. Blakley by their interests in *182 the Ed Krist Company, a co-partnership, as it may be represented in the name of Ed Krist Company, Ed Krist individually, Florine Materials Company, or any other individual or concern as nominee for Ed Krist Company, said sale, assignment and transfer to convey every asset wherever situated, including the trade name Ed Krist Company, Florine Materials Company and any other company, enterprise or asset owned and operated by the [partnership] * * *. "It is intended * * * to convey * * * each and every asset constituting any interest [of the partner and] * * * "* * * that the interest in [the partnership] * * * not only conveys the assets but all of the rights, privileges and authorities heretofore held by the said Ed Krist and Wm. A. Blakley * * *." The Corporation also assumed all liabilities of the partnership. The total sales price was to be equally divided between petitioner and Blakley. Each received a cash payment of approximately $53,479, representing 25 per cent of his total share, and a note in the principal sum of approximately $160,439, payable in three installments, due one, two, and three years from date of sale. All transfers of interest, rights, assets and *183 liabilities included in the sales agreement were duly made. Among the assets of the partnership, acquired by the Corporation, was a tract of land identified as No. 12,999 on which 329 houses, 38 per cent completed, were being built. These houses were finished and sold by the Corporation in 1945, 1946, and 1947. The Corporation also acquired installment accounts due from previous sales by the partnership, having an unrealized profit value of $205,158.98. The partnership filed a final return of income for the part of its fiscal year in which it was in existence, October 1, 1943, to August 19, 1944. Petitioner and his wife, in their 1944 returns, reported the $53,479.93 cash payment from the Corporation as a long-term capital gain. Respondent disallowed such treatment and determined that: (1) $205,158.98, representing the amount of unrealized profit on installment obligations transferred to the Corporation, was taxable in full under the provisions of section 44 (d) of the Internal Revenue Code, as income received in 1944; and that (2) $222,680.42, representing the differences in the amount of unrealized profits on installment obligations and the total sales *184 price of $427,839.40, constituted ordinary income. He permitted 25 per cent of the $222,680.42 to be reported in 1944, the remainder to be reported when payment was made by the Corporation on its notes. Petitioner, by the sales agreement of August 19, 1944, transferred his partnership interest to the Corporation. Opinion RICE, Judge: The petitioner correctly contends and respondent agrees that the sale of a partnership interest is the sale of a capital asset, and that such gain or loss as may arise therefrom should receive capital-gains treatment under section 117 of the Internal Revenue Code. G.C.M. 26379, C.B. 1950-1, p. 58. When there is a sale of partnership assets, on the other hand, each asset must be individually examined. Only the gain or loss on those which meet the requirements of section 117 may receive capital-gains treatment. The question, therefore, that we must determine is whether in fact and in substance the petitioner sold and transferred to the Corporation, his interest in the partnership, or only its assets. The Agreement of Sale, signed by petitioner on August 19, 1944, expressly states that it is the desire of the *185 Corporation "to buy all interests" in the partnership business. That Agreement further provides that the interest sold and transferred by petitioner and his copartner, William A. Blakley, conveyed not only the assets, but all of the rights, privileges, and authorities held by them in the partnership. We think the terms of the agreement, coupled with the subsequent transfer of all interests, rights, and privileges of the partners and the continued operation of the partnership business by the Corporation, are clear evidence that petitioner intended and did sell his interest in the partnership and not its assets. Dudley T. Humphrey, 32 B.T.A. 280 (1935); Allan S. Lehman, 7 T.C. 1088 (1946), affd. 165 Fed. (2d) 383 (C.A. 2, 1948), certiorari denied 334 U.S. 819 (1948); H. R. Smith, 10 T.C. 398 (1948), affd. 173 Fed. (2d) 470 (C.A. 5, 1949), certiorari denied 338 U.S. 818 (1949); Joseph Pursglove, Jr., 20 T.C. 68 (promulgated April 14, 1953). The cases of Commissioner v. Whitney, 169 Fed. (2d) 562 (C.A. 2, 1948), certiorari denied 335 U.S. 892 (1948), and *186 Paul W. Trousdale, 16 T.C. 1056 (1951), on appeal C.A. 9, August 13, 1951, cited to us by respondent, are clearly distinguishable on the facts, as is Williams v. McGowan, 152 Fed. (2d) 570 (C.A. 2, 1945), which involved not the sale of partnership interests or assets but the sale of a sole proprietorship. Our holding that petitioner sold his interest in the partnership would ordinarily entitle him to accord capital-gains treatment to all such gain as he realized on the sale; and petitioner contends that sale of a partnership interest precludes any examination of the assets or holdings of the partnership which may be transferred by such sale, including installment obligations. Section 44 (d) of the Internal Revenue Code, however, is a mandatory provision, not inconsistent with section 117, but one which expressly provides special treatment for installment obligations, regardless of how they might otherwise have been treated under another section of the Code. The partnership took advantage of section 44 (b)[1] of the Code when it elected to report sales of its houses on the installment basis. Having done so, it cannot now escape the *187 plain provisions of section 44 (d). [2] As we said in Rhett W. Woody, 19 T.C. 350 (1952), pp. 353, 354, a recent case involving the alleged sale of a partnership interest: "The petitioner's argument is contrary to express provisions of the Code governing the disposition of installment obligations. The provisions of section 44 (a) permitting a taxpayer to report as gross income only a portion of the cash received from installment sales create a privilege. However, that privilege is subject to the condition imposed by section 44 (d), * * * which provides that gain or loss shall result from the disposition of installment obligations and sets forth in detail how that gain or loss is measured, and in addition provides that 'Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.'" *188 The properties covered by the installment obligations herein were properties held for sale in the ordinary course of the partnership business, and gain realized on their sale would be taxed as ordinary income since they were not capital assets. Hence, we agree with respondent that when those installment obligations were transferred to the Corporation, the partnership received income taxable in the full amount of their total unrealized profit value. We think petitioner's alternative contention that he should be allowed to report such income on the installment basis is without merit, and further agree with respondent that such treatment would obviously thwart the clear legislative purpose which lead to the enactment of section 44 (d). On the authority of Rhett W. Woody, supra, we hold that the respondent correctly determined that the partnership received additional ordinary income in 1944 in the amount of the unrealized profit value of the installment obligations transferred to the Corporation. The petitioner's remaining gain on the sale, represented by his equal share of the difference in the unrealized profit value of the installment obligations and the total sales *189 price received by the partners, should be accorded capital-gains treatment since we have determined that he sold his partnership interest and not partnership assets. Decision will be entered under Rule 50. Footnotes
1. SEC. 44. INSTALLMENT BASIS. * * *
(b) Sales of Realty and Casual Sales of Personality. [sic] - In the case (1)of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. * * *↩
2. (d) Gain or Loss upon Disposition of Installment Obligations. - If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange - the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange - the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. * * *↩