# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 9, 2018          Decided June 11, 2019

No. 17-1268

GRECIAN MAGNESITE MINING, INDUSTRIAL & SHIPPING CO.,
SA,
APPELLEE

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLANT

———

On Appeal from the Decision
of the United States Tax Court

———

*Deborah K. Snyder*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Travis A. Greaves*, Deputy Assistant Attorney General, and *Gilbert S. Rothenberg* and *Richard Farber*, Attorneys.

*Michael J. Miller* argued the cause for appellee. With him on the brief was *Ellen Brody*.

Before: ROGERS and SRINIVASAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Grecian Magnesite Mining, a foreign corporation, realized substantial income when it redeemed its interest in a U.S. partnership. At the time, Grecian operated entirely outside the United States, save for its interest in the partnership. The question we face is whether the geographic origin of the redemption income—its "source"—is within or without the United States.

Under the Internal Revenue Code's general rule, the income would be sourced according to the residence of the taxpayer. But that general rule is subject to an exception known as the U.S. office rule. Under that exception, income from any sale of personal property attributable to a nonresident's U.S. office is sourced in the United States. *See* I.R.C. § 865(e)(2).

The Tax Court held that the U.S. office rule is not satisfied in this case, reasoning that the proper focus in the circumstances is where the redemption itself occurred, as opposed to where the activities causing appreciation of the redeemed partnership interest occurred. The redemption itself, the Tax Court determined, should not be attributed to Grecian's U.S. office, and the income therefore should be treated as foreign source. We affirm the Tax Court's decision.

I.

A.

Appellee Grecian Magnesite Mining (Grecian) is a privately held corporation organized under the laws of Greece. Grecian's business involves mining, processing, and selling the mineral magnesite, and it conducts its business in Greece.

In 2001, Grecian acquired a roughly 15% interest in Premier Chemicals (Premier). Premier is headquartered in the United States and is a Delaware limited liability company classified as a partnership for U.S. tax purposes. Like Grecian, Premier is in the business of mining and processing magnesite. Unlike Grecian, Premier extracts its ore exclusively from sites in the United States and conducts its operations entirely through fixed places of business in the United States.

On July 21, 2008, Grecian entered into an agreement with Premier to redeem its interest in the partnership. The redemption resulted in a gain of over $6 million for Grecian, spread over 2008 and 2009. Grecian did not include any of the gain on either its 2008 or 2009 tax returns. The Internal Revenue Service (IRS) initiated an audit and determined, *inter alia*, that the entire capital gain from the redemption was subject to U.S. tax.

Grecian brought suit in the Tax Court contesting the IRS's determination. Before trial, Grecian conceded that approximately $2 million of the $6 million gain derived from U.S. real property interests and thus was subject to U.S. tax under a section of the Internal Revenue Code not at issue in this appeal. The present dispute concerns the remaining $4 million, which we will refer to as the "disputed gain" consistent with the practice of the Tax Court and the parties.

## B.

Under the Internal Revenue Code, a foreign corporation such as Grecian may be subject to tax in the United States on its "income which is effectively connected with the conduct of a trade or business within the United States," or ECI (for "effectively connected income"). I.R.C. § 882; *see also id.* § 881. Not all U.S.-source income is ECI, and not all ECI is U.S.-source income. Yet the parties agree that, in this case, the

disputed gain is within the class of income that is ECI (and therefore taxable) if and only if it is U.S.-source income. As a result, the sole question before us is the source of the disputed gain.

No specific sourcing provision governed income derived from the disposition of a partnership interest at the time of the redemption. Instead, the general sourcing rules for the sale of personal property applied. *See* I.R.C. § 865. Under the general rule, income realized on the sale of personal property is sourced wherever the taxpayer resides. *See id.* § 865(a). But that general rule is subject to several statutory exceptions, including one known as the U.S. office rule. *See id.* § 865(e)(2)(A).

Under the U.S. office rule, "if a nonresident maintains an office or other fixed place of business in the United States, income from any sale of personal property (including inventory property) attributable to such office or other fixed place of business shall be sourced in the United States." *Id.* To determine whether those conditions are met, the "principles of section 864(c)(5) shall apply." *Id.* § 865(e)(3). The cross-referenced subsection, in turn, says in relevant part that income "shall not be considered as attributable to an office or other fixed place of business within the United States unless such office or fixed place of business is a material factor in the production of such income, gain, or loss and such office or fixed place of business regularly carries on activities of the type from which such income, gain, or loss is derived." *Id.* § 864(c)(5)(B).

The Commissioner raised two principal arguments before the Tax Court. First, he contended that the disposition of a partnership interest should be treated like a sale of the partner's distributive share of each of the partnership's underlying assets. That argument drew on the theory of partnerships

known as the "aggregate theory," under which partners are viewed as directly owning the partnership's assets. Second, he argued in the alternative that the disputed gain was attributable to Grecian's U.S. office (Premier) under the U.S. office rule—and therefore was U.S.-source income—because all activities leading to the appreciation of the partnership share occurred in the United States through Premier's successful operations.

Grecian countered that the partnership interest should be viewed as a single, indivisible capital asset, building on a competing theory of partnerships known as the "entity theory." Grecian further argued that the income was not attributable to Premier because the relevant attribution rules focus on the redemption transaction itself, not on the conduct generating the asset's appreciation. The transaction itself, Grecian contended, was attributable to its offices in Greece rather than any U.S. office.

The Tax Court sided with Grecian on both arguments advanced by the Commissioner. The court rejected the application of the aggregate theory, holding that Grecian's interest in the partnership was a single, indivisible capital asset. The Court also rejected the Commissioner's alternative argument, holding that the income from the redemption was not attributable to the U.S. office under the U.S. office rule. It adopted Grecian's view that the attribution inquiry under the U.S. office rule focuses on the redemption transaction rather than the appreciation of the partnership's value, and that Grecian's U.S. office neither was a material factor in that transaction nor regularly carried on activities of that type.

The Commissioner does not challenge the Tax Court's first holding on appeal. Consequently, the only question is whether the disputed gain is attributable to a U.S. office of Grecian under the U.S. office rule.

II.

"We review decisions of the Tax Court 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014) (quoting I.R.C. § 7482(a)(1)). There are no disputed issues of fact in this appeal, and "we apply *de novo* review to the Tax Court's determinations of law." *Byers*, 740 F.3d at 675.

At the outset, we note that the issue in this case is of little prospective significance. After the Tax Court's decision, Congress enacted legislation establishing that the aggregate theory (rather than the entity theory) governs the disposition of a partnership interest. *See* Tax Cuts and Jobs Act of 2017 § 13501(a)(1), I.R.C. § 864(c)(8). That legislation enshrines a position the Commissioner (unsuccessfully) advanced before the Tax Court but did not appeal here. The amended provision will control the treatment of analogous income in future disputes, but the parties agree that the provision applies only prospectively and thus does not govern this case.

With regard to the issue the Commissioner does appeal, concerning the application of the U.S. office rule, we note that the Tax Court assumed without holding that Premier should be considered Grecian's U.S. office, and Grecian has not challenged that assumption. We thus bypass any inquiry into whether Grecian maintains a U.S. office or fixed place of business at all and proceed to consider whether, assuming Grecian does, the disputed gain is attributable to that office.

A.

1. The longstanding position of the Internal Revenue Service, set out in Revenue Ruling 91-32, is that "[i]ncome from the disposition of a [U.S.] partnership interest by [a]

foreign partner will be attributable to the foreign partner's fixed place of business in the United States." Rev. Rul. 91-32, 1991-1 C.B. 107, 108. We defer to the Revenue Ruling's interpretation of the Revenue Code to the extent it has "the 'power to persuade.'" *Del Commercial Props., Inc. v. Comm'r*, 251 F.3d 210, 214 (D.C. Cir. 2001) (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000)); *see also Mellow Partners v. Comm'r*, 890 F.3d 1070, 1077–79 (D.C. Cir. 2018). The Ruling's persuasive force "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Davis v. United States*, 495 U.S. 472, 484 (1990) ("[W]e give an agency's interpretations . . . considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use."). The Revenue Ruling, if accepted, would dispose of this case, as it specifically addresses the precise question before us.

While the Revenue Ruling has the benefit of longevity—it has been the IRS's unchanged position for some thirty years—little else militates in favor of deferring to it. The pertinent portion comprises a single unreasoned sentence in a Ruling that spans four pages of the Cumulative Bulletin. *See* 1991-1 C.B. at 108. That sentence cites the relevant statute, § 865(e)(3), but without any elaboration. And it also cites a Tax Court decision, *Unger v. Comm'r*, 58 T.C.M. (CCH) 1157, 1159 (1990), which neither involved nor purported to opine on the attribution of income from the sale of personal property by a foreign partner. *See* Kimberly S. Blanchard, *Rev. Rul. 91-32: Extrastatutory Attribution of Partnership Activities to Partners*, 97 Tax Notes Today 173–69 (Sept. 8, 1997) (calling the citation to *Unger* "pointless" and the Revenue Ruling's critical sentence "purely tautological"). We thus do not defer to the Ruling and proceed to consider the question afresh.

2. The U.S. office rule provides: "if a nonresident maintains an office or other fixed place of business in the United States, income from any sale of personal property (including inventory property) attributable to such office or other fixed place of business shall be sourced in the United States." I.R.C. § 865(e)(2)(A). The interpretive dispute hinges in large part on what conduct must be "attributable to such [i.e., the U.S.] office." According to the Commissioner, it suffices that the activity that generated the appreciation in Premier's value—namely, the successful operation of its magnesite mining business—is attributable to the U.S. office. Grecian responds that the transaction *itself* must be attributable to the U.S. office and that the redemption here is not.

The parties each seek to support their respective positions with competing understandings of what is modified by the central statutory phrase "attributable to such office or other fixed place of business." The Commissioner contends that the phrase modifies the noun "income," whereas Grecian reads the phrase to modify the noun "sale." Grecian's interpretation would tend to support its view that it is the redemption transaction as the "sale," rather than the appreciation of the interest in Premier, that must be "attributable to" Grecian's U.S. office for the income to be U.S.-source income.

We think Grecian has the better reading of the statute. Grecian invokes the "rule of the last antecedent," under which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Technically, Grecian's position is an application not of the last-antecedent rule (which applies only to pronoun antecedents) but rather of the related nearest-reasonable-referent canon. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 152 (2012). Labels aside, the

point is the same: ordinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest.

Grecian's interpretation of the statute, one might note, does not in fact point to the nearest possible referent. That is because "personal property," not "income" nor "sale," is the non-parenthetical term immediately preceding "attributable to such office or other fixed place of business." Neither party, though, suggests that the latter phrase could modify "personal property," and common sense would preclude such an interpretation. "Sale" thus is the nearest *reasonable* referent.

To be sure, the nearest-reasonable-referent canon—like its cousin, the last-antecedent rule—"is not an absolute and can assuredly be overcome by other indicia of meaning." *Lockhart v. United States*, 136 S. Ct. 958, 963 (2016) (quoting *Barnhart*, 540 U.S. at 26). But here, other indicia of meaning all point in the same direction, fortifying the conclusion that the sale is the proper focal point of the attribution inquiry.

Most tellingly, in setting out where to look for the relevant rules of attribution when applying the U.S. office rule, the statute again directs attention to the "sale": "The principles of section 864(c)(5) shall apply in determining . . . whether *a sale* is attributable to such an office or other fixed place of business." I.R.C. § 865(e)(3) (emphasis added). The title of the statutory section underscores the centrality of the sale, reading: "Special rules for *sales through offices or fixed places of business*." *Id.* § 865(e) (emphasis added); *see also id.* § 865(e)(3) ("Sales attributable to an office or other fixed place of business."). And in establishing an exception to the U.S. office rule, the statute provides that the rule "shall not apply to any *sale* of inventory property which is sold for use . . . outside the United States if an office . . . in a foreign country materially participated *in the sale*." *Id.* § 865(e)(2)(B) (emphasis added).

If the exception turns on a foreign office's participation in the "sale," the rule presumably turns on a U.S. office's participation in the sale.

In all those ways, the statute frames the rule as applying to sales rather than income-generating activity. The statute's emphasis on the transaction, rather than on the appreciation of the underlying asset, is manifest.

Nothing in § 864(c)(5), the cross-referenced source of the attribution rules, points in a different direction. According to that provision, "income, gain, or loss shall not be considered as attributable to an office or other fixed place of business within the United States unless such office or fixed place of business is a material factor in the production of such income, gain, or loss and such office or fixed place of business regularly carries on activities of the type from which such income, gain, or loss is derived." *Id.* § 865(c)(5)(B). The Commissioner claims that "the production" of the disputed gain includes the mining activities of Premier that led to the partnership's change in value. In our view, though, both the provision's interaction with the U.S. office rule and its context within § 864 weigh against the Commissioner's reading.

As an initial matter, § 865(e)(3) incorporates by reference not the text of § 864(c)(5) but rather its "principles." *Id.* § 865(e)(3). For that reason, we are disinclined to clinically parse § 864(c)(5) in search of any conceivable override of § 865(e)'s focus on the sale transaction. The better approach is to read § 864(c)(5) at a higher level of generality, as supplying a two-pronged test: first, the U.S. office must be a "material factor" in the relevant activity, and second, the office must "regularly carr[y] on activities of [that] type." *Id.* § 864(c)(5)(B).

Even if we were inclined to dissect the provision's text in the manner urged by the Commissioner, his construction still would not convince us. True, the word "production" is capacious enough to encompass value creation as well as sales. But it is capacious by design not because the provision compels considering every kind of "production" *in any given case*, but rather because, across cases, the provision applies to varied contexts in which the relevant forms of income "production" can differ. By its terms, § 864(c)(5) governs the attribution of income from rents or royalties from intangible property; "dividends, interests, or amounts received for the provision of guarantees of indebtedness"; and certain sales of personal property. *Id.* § 864(c)(4)(B). The sense in which a taxpayer produces the income, gain, or loss differs across those contexts. The specific terms of § 865(e)(5), including their focus on the sale, thus carry considerably more weight than the umbrella term "production" in § 864(c)(5).

The regulations interpreting § 864(c)(5) confirm that the provision does not mandate considering income production in each and every sense in any given case. The regulations provide that, in applying the material-factor test to "[r]ents, royalties, or gains on sales of intangible property," "[a]n office or other fixed place of business in the United States shall not be considered to be a material factor in the realization of income, gain, or loss for purposes of this subdivision merely because the office or other fixed place of business . . . [d]evelops, creates, produces, or acquires and adds substantial value to, the property which is leased, licensed, or sold, or exchanged." 26 C.F.R. § 1.864-6(b)(2)(i). By enabling the attribution inquiry to focus on the site of the transaction rather than the site of the value creation in the context of rents and royalties, the regulation generally supports our understanding that the provision it interprets—§ 864(c)(5)—does not countermand the U.S. office rule's focus on the sale.

Finally, the U.S. office rule's legislative history further supports our interpretation. Under the preexisting regime, the default rule for sales of personal property was the so-called "title-passage rule." That rule called for income from sales of personal property to be sourced where title to the property literally passed. *See* H.R. Rep. No. 99-426, at 359 (1985). That formalistic regime was vulnerable to manipulation, *id.* at 360, spurring Congress to replace the title-passage rule with § 865(a), which generally sources income according to the residence of the taxpayer.

In ordinary cases, a focus on the taxpayer's residence would be difficult if not impossible to manipulate. Yet the rule left open a loophole in the special case in which a foreign resident maintained a U.S. office or fixed place of business. In that event, "some foreign corporations with U.S. branches" could "engage in significant business operations through a fixed place of business in the United States and avoid paying U.S. tax." S. Rep. 99-313, at 330 (1985). Congress evidently responded with the U.S. office rule, sourcing income from sales occurring through domestic offices according to the "location of the economic activity" giving rise to the sale. H.R. Rep. No. 99-426 at 359. The House Committee Report explains the operation of the U.S. office rule in terms that support Grecian's interpretation: "If the seller maintains a fixed place of business outside the seller's country of residence which materially participates in a *sale*, however, the committee generally believes that the *level of economic activity with respect to the sale* that is associated with that place of business is high enough such that" the income should be sourced at that location. *Id.* at 360–61 (emphasis added); *see also id.* (showing concern with "sales activities" and "selling activity").

The Commissioner submits that, if Congress sought to create a regime less susceptible to manipulation, it would have

avoided a rule based on such formalisms as the locus of the sale. But Congress's evident desire to enact a less formalistic regime does not necessarily mean it enacted the least formalistic regime. And the provisions at issue apply not only to the disposition of partnership interests but also to the sale of myriad other personal property. It is doubtful that Congress would have intended to source income according to the innumerable forces that change the market value of most personal property. In that light, Congress's choice to emphasize the sale struck an understandable balance between its dual aims of administrability and avoiding manipulation. *Cf. id.* at 360 ("[S]ource rules should operate clearly without the necessity for burdensome factual determinations, limit erosion of the U.S. tax base and . . . generally not treat as foreign income any income that foreign countries do not or should not tax.").

In sum, the U.S. office rule's focus, as indicated by its text, structure, regulations, and legislative history, is directed to the transaction rather than the appreciation of the asset.

B.

We now turn to the rule's application in this case. The test comprises three prongs: first, whether Grecian has a U.S. office or fixed place of business; second, whether Grecian's U.S. office was a "material factor" in the redemption transaction; and third, whether Grecian's U.S. office "regularly carries on activities of the type from which such income, gain, or loss is derived." I.R.C. § 864(c)(5). All three prongs must be satisfied for the income to be treated as U.S.-source income.

As noted, Grecian does not dispute that Premier is its U.S. office, satisfying the first prong. Grecian contends that neither the second nor third prong is met. We agree with Grecian as to

third prong and we therefore have no reason to consider the second one.

In assessing whether a U.S. office "regularly carries on" an activity, both parties evidently understand the requirement (as do we) to incorporate some sense that the activity in question falls within the ambit of the office's typical course of business. The question, then, is whether the redemption transaction was within the ordinary course of business for Premier, Grecian's U.S. office. Grecian argues that Premier is in the magnesite-mining business, not the partnership-interest-redemption business. The Commissioner responds that partnerships regularly carry on activities like redemptions because partnerships are inherently engaged in the business of managing transactions with members.

We agree with Grecian's approach. It is not Premier-as-partnership that matters. Instead, it is Premier-as-office-or-fixed-place-of-business—i.e., its headquarters, mines, and the other tangible, fixed places of business in the United States—that matters. The U.S. office rule speaks in terms of the concrete "office or fixed place of business" and that office's or place's "activities," not about its corporate form. Under the Commissioner's understanding, the prong would do little work. Just as managing transactions with partners inheres in the corporate form of a partnership, so too does managing a business's property inhere in the operation of any business. Any sale of personal property thus could be said to be the type of activity in which an office regularly engages. We reject that understanding and instead opt for the commonsense notion that Premier's underlying business activities should be the focus. Premier was engaged in the business of magnesite mining, extraction, and processing, not in the business of redemption. Because the third prong

therefore is unsatisfied, the disputed gain is unattributable to Grecian's U.S. office.

\*    \*    \*    \*    \*

For the foregoing reasons, we affirm the decision of the Tax Court.

*So ordered.*