# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 12, 2022         Decided July 12, 2022

No. 21-1171

NATIONAL ASSOCIATION OF BROADCASTERS, ET AL.,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

On Petition for Review of an Order
of the Federal Communications Commission

*Stephen B. Kinnaird* argued the cause for petitioners. With him on the joint briefs were *Richard Kaplan, Jerianne Timmerman, Robert E. Branson, David Honig,* and *James Winston.*

*William J. Scher*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Robert B. Nicholson* and *Peter M. Bozzo,* Attorneys, U.S. Department of Justice, and *Jacob M. Lewis*, Acting Deputy General Counsel, Federal Communications Commission.

Before: PILLARD and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: In October 1964, Barry Goldwater's supporters sponsored thirty minutes of television time for an actor named Ronald Reagan to make a closing argument for Goldwater's struggling campaign. The speech — which failed to save Goldwater but launched Reagan on a path to the White House — was introduced with a stock announcement:

> The following pre-recorded political program is sponsored by TV for Goldwater-Miller on behalf of Barry Goldwater, Republican candidate for President of the United States.[1]

Today, similar announcements for sponsored radio broadcasts are required by the Communications Act of 1934. To make that announcement, a broadcaster must ask its employees and sponsors for information necessary to determine a sponsor's identity.

Recently, the FCC began to require more. It issued an order mandating that radio broadcasters check two federal sources to verify a sponsor's identity.

Because the FCC has no authority to impose that verification requirement, we vacate that facet of its order.

---

[1] Reagan Foundation, *"A Time for Choosing" by Ronald Reagan*, YouTube (Apr. 2, 2009), https://www.youtube.com/watch?v =qXBswFfh6AY&t=2s.

3

I

Since 1927, Congress has forbidden the operation of a radio station without a federal license. Radio Act of 1927, Pub. L. No. 69-632, 44 Stat. 1162. It tasked the Federal Radio Commission, now called the Federal Communications Commission, with granting those licenses and administering the obligations that come with them. *Id.*; *see* 47 U.S.C. § 301 *et seq.*

Section 317(a) of the Communications Act imposes one such obligation. It requires broadcasters to announce who "paid for or furnished" a sponsored program at the time of the program. 47 U.S.C. § 317(a)(1). To ensure that the broadcaster can make that identification, § 317(c) imposes an additional duty:

> The licensee of each radio station shall exercise reasonable diligence to obtain from its employees, and from other persons with whom it deals directly in connection with any program or program matter for broadcast, information to enable such licensee to make the announcement required by this section.

47 U.S.C. § 317(c). We'll call the "licensee of" the "radio station" a "broadcaster" and "persons with whom [the broadcaster] deals directly" "sponsors."

Finally, Congress required the FCC to "prescribe appropriate rules and regulations to carry out the provisions of" § 317. 47 U.S.C. § 317(e).

Recently, the FCC has raised concerns that the Chinese and Russian governments have been secretly leasing airtime to broadcast propaganda on American radio. To address that problem, the FCC issued an order called "In the Matter of Sponsorship Identification Requirements for Foreign Government-Provided Programming." 36 FCC Rcd. 7702 (2021). It requires broadcasters to undertake a five-step process whenever they lease airtime to a sponsor:

1) Tell the sponsor about the § 317 disclosure requirement;

2) Ask the sponsor whether it is a foreign governmental entity or an agent of one;

3) Ask the sponsor whether anyone further back in the production or distribution chain is a foreign governmental entity or an agent of one;

4) Independently confirm the sponsor's status, at both the time of the lease and the time of any renewal, by checking the Department of Justice's Foreign Agents Registration Act website and the FCC's U.S.-based foreign media outlets reports; and

5) Document those inquiries and investigations.

*See id.* ¶ 35.

The National Association of Broadcasters objected to step four (the verification requirement) and petitioned for review.

5

II

An agency must identify statutory authority for any action it takes. *See Truck Trailer Manufacturers Association v. EPA*, 17 F.4th 1198, 1201 (D.C. Cir. 2021). Here, the FCC has not done so. Rather, it has decreed a duty that the statute does not require and that the statute does not empower the FCC to impose.

Remember the only obligation that § 317(c) places on a broadcaster: It must "exercise reasonable diligence **to obtain from its employees**, and **from other persons with whom it deals directly** . . . information to enable [the broadcaster] to make the announcement required by this section." 47 U.S.C. § 317(c) (emphases added).

In that sentence, the "to obtain" clause means broadcasters do not need to exercise diligence *in general*. And the two "from" clauses mean broadcasters do not need to make a diligent effort to obtain the information from any *possible* source. They simply need to be diligent in their efforts "to obtain" the necessary information "from" employees and sponsors. *See Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner*, 926 F.3d 819, 824 (D.C. Cir. 2019) ("ordinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest"). Nothing more.

The FCC's verification requirement ignores the limits that the statute places on broadcasters' narrow duty of inquiry. It instead tells a broadcaster to seek information from two federal sources in addition to the two sources that the statute prescribes. That is not the law that Congress wrote.

The FCC offers two arguments against that interpretation.

First, it says that verifying information's accuracy is part of making a reasonably diligent effort to obtain that information from a source.  But § 317(c) imposes a duty of inquiry, not a duty of investigation.  *Loveday v. FCC*, 707 F.2d 1443, 1449 (D.C. Cir. 1983) (Section 317(c) "is satisfied by appropriate inquiries made by the station to the party that pays it for the broadcast").  It does not make broadcasters responsible for the truth of the information they obtain.

Second, the FCC argues that even if § 317(c) does not affirmatively authorize it to require searches of the federal sources, it can require the searches as part of its general authority to "prescribe appropriate rules and regulations to carry out the provisions" of § 317.  47 U.S.C. § 317(e).  A generic grant of rulemaking authority to fill gaps, however, does not allow the FCC to alter the specific choices Congress made.  *See Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C. Cir. 2019) ("A general grant of authority cannot displace the clear, specific text of the Act."); *Alabama Association of Realtors v. Department of Health & Human Services*, 141 S. Ct. 2485, 2488 (2021).  Instead, the FCC must abide "not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes."  *Colorado River Indian Tribes v. National Indian Gaming Commission*, 466 F.3d 134, 139-40 (D.C. Cir. 2006) (quoting *MCI Telecommunications, Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218, 231 n.4 (1994)).

Here, Congress chose the means for broadcasters to obtain the information necessary to announce who paid for programming: Ask employees and sponsors.  The FCC cannot alter Congress's choice.

7

* * *

We hold that the FCC cannot require radio broadcasters to check federal sources to verify sponsors' identities. We therefore vacate that aspect of the challenged order. Because our resolution of the statutory question resolves the parties' dispute, we do not reach the broadcasters' other APA arguments or their First Amendment claim.

*So ordered.*