# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 8, 2024        Decided July 23, 2024

No. 23-1142

INDU RAWAT,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

Appeal from the United States Tax Court

———

*Christopher S. Rizek* argued the cause for appellant. With him on the briefs were *Leila D. Carney* and *Nathan J. Hochman*.

*Douglas C. Rennie*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Jacob Earl Christensen*, Attorney.

Before: SRINIVASAN, *Chief Judge*, MILLETT and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: In 2008, Indu Rawat, a foreign businesswoman, sold her partnership stake in a U.S. company

for $438 million.  Approximately $6.5 million of that sum was attributable to a gain on the company's inventory.  The question in this case is whether that inventory gain is U.S.-source income subject to U.S. taxes.  We hold it is not.

I.

A.

When a nonresident alien sells an interest in a U.S. partnership, the U.S. tax consequences of the transaction implicate two bodies of rules:  those governing the taxation of transactions in partnership interests and those governing the taxation of income earned by nonresident aliens.

We first outline the relevant rules governing partnership-interest transactions.  Under § 741 of the Internal Revenue Code, when a partner sells her partnership interest, any gain or loss she realizes on the sale is generally "considered as gain or loss from the sale or exchange of a capital asset."  In other words, any gain the partner realizes is taxed as a capital gain rather than as ordinary income.  The distinction matters because the tax rate applicable to capital gains is often lower than the rate applicable to ordinary income.  *See* I.R.C. § 1(a)–(d), (h), (j).

Section 741, however, includes an express exception to its general treatment of gains from the sale of partnership interests as capital gains.  Namely, § 741's rule applies "except as otherwise provided in section 751 (relating to unrealized receivables and inventory items)."  I.R.C. § 741.  The referenced provision, § 751, contains a subsection entitled "Sale or exchange of interest in partnership."  *Id.* § 751(a).  Under that subsection, when the sale of a partnership interest produces income (what we will also call "gain") "attributable to" either "unrealized receivables of the partnership" or

"inventory items of the partnership," that income "shall be considered as an amount realized from the sale or exchange of property *other than a capital asset*." *Id.* (emphasis added). That is, gain from the sale of a partnership interest attributable to "inventory items" or "unrealized receivables" is taxable as ordinary income rather than as a capital gain.

We now turn to the relevant rules defining the tax obligations faced by nonresident aliens. As a general matter, and for purposes of this case, nonresident aliens must pay U.S. taxes on income "received from sources within the United States," but need not pay U.S. taxes on income received from sources outside the United States. *See id.* § 871(a)–(b). When a nonresident alien sells an interest in a U.S. partnership, a straightforward sourcing rule has governed since the enactment of the Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115-97, 131 Stat. 2054: income from the sale is U.S.-source (and hence taxable). *See* I.R.C. § 864(c)(8). But the events in this case predated the TCJA's enactment. And prior to the TCJA, "[n]o specific sourcing provision governed income derived from the disposition of a partnership interest." *Grecian Magnesite Mining, Indus. & Shipping Co. v. Comm'r*, 926 F.3d 819, 821 (D.C. Cir. 2019). Instead, the Code provisions governing the sale of personal property controlled. *Id.* at 822. Those rules treat income from the sale of most personal property by a nonresident alien as foreign-source income and thus nontaxable. I.R.C. § 865(a)(2). There are exceptions, though, including for inventory: income derived from the sale of inventory might be U.S.-source or foreign-source, depending on various context-specific considerations related to the sale. *See id.* §§ 861(a)(6), 862(a)(6), 865(b). Such income thus may be taxable even if the seller is a nonresident alien.

To sum up: (1) Gain on the sale of a partnership interest is taxed as a capital gain, except that it is taxed as ordinary

income to the extent the gain is attributable to § 751(a) property (inventory and unrealized receivables). (2) For present purposes, only a nonresident alien's U.S.-source income is taxable. (3) At the time of the relevant events in this case, income from a nonresident alien's sale of a partnership interest was taxed according to the sourcing rules for personal property sales. And (4), under those rules, income from a nonresident alien's sale of personal property generally is foreign-source (and hence nontaxable), but income from a nonresident alien's sale of inventory can be U.S.-source (and hence taxable).

B.

Indu Rawat is a nonresident alien. During the early 2000s, she made several investments in Innovation Ventures, LLC, a Michigan business (and a partnership for tax purposes), accumulating a 29.2% stake. Innovation Ventures owns another company, Living Essentials, LLC, which sells the popular energy drink 5-Hour Energy.

In 2008, Innovation Ventures bought back Rawat's share of the company in exchange for a promissory note worth approximately $438 million. At the time of the transaction, Innovation Ventures held inventory valued at $6.4 million, which it later sold for a profit of $22.4 million. As a 29.2% owner of that inventory at the time she sold her interest in Innovation Ventures, Rawat was entitled to $6.5 million of the inventory gain. All agree, therefore, that of the $438 million Rawat received for her stake in Innovation Ventures, $6.5 million is attributable to a gain on Innovation Ventures' sale of inventory.

Rawat recognized ordinary income of $6.5 million resulting from the inventory gain in the 2008 tax year. But she never reached an agreement with the IRS on the source of that income and, accordingly, whether it was subject to U.S. taxes.

The Commissioner took the position that the inventory gain was U.S.-source, taxable income and notified Rawat that she owed approximately $2.3 million in taxes on it. While Rawat eventually paid the requested amount (plus penalties, interest, and other adjustments), she promptly petitioned the Tax Court for a refund, contending that the inventory gain was foreign-source income and therefore nontaxable.

The dispute turned on whether the inventory gain should be understood as income Rawat earned from selling inventory. If so, the sourcing rules governing the sale of inventory would apply, under which income from the sale could be considered U.S.-source (and taxable) depending on the particulars. But the Commissioner conceded that if, by contrast, Rawat did not in fact sell inventory, income from the sale would be treated as nontaxable foreign-source income.

The parties' competing positions revolved around competing understandings of § 751(a). That provision, as noted, states that gain from the sale of a partnership interest that is "attributable to . . . inventory items of the partnership"— inventory gain—"shall be considered as an amount realized from the sale or exchange of property other than a capital asset." I.R.C. § 751(a). While the parties agreed that § 751(a) requires inventory gain to be taxed as ordinary income, the Commissioner argued that it does more than that: in his view, § 751(a) also deems gain on the sale of a partnership interest attributable to inventory to be gain on the sale *of* inventory, such that it can be taxable as U.S.-source income. Rawat, however, contended that § 751(a) has a more limited scope. She insisted that it does not give rise to a deemed sale of inventory and thus does not render taxable what would otherwise be nontaxable income. Rather, according to Rawat, § 751(a) merely subjects inventory gain to ordinary-income taxation *if* the gain is otherwise taxable. And Rawat considered

the inventory gain she realized to be nontaxable, as it arose from the sale of a partnership interest, not from the actual sale of inventory. Accordingly, she maintained, the gain constitutes proceeds from the sale of general personal property (as opposed to inventory) and is foreign-source income because she is a nonresident alien.

The Tax Court agreed with the Commissioner, holding that under § 751(a), Rawat must be taxed as though she actually sold the inventory that gave rise to the inventory gain. Rawat now appeals.

## II.

"We review tax court decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *Cross Refined Coal, LLC v. Comm'r*, 45 F.4th 150, 155 (D.C. Cir. 2022) (quoting I.R.C. § 7482(a)(1)). Because this appeal turns only on questions of law, our review is de novo. *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 976 (D.C. Cir. 2003).

The question we must resolve is whether § 751(a) merely establishes that inventory gain arising from the sale of a partnership interest is taxed as ordinary income rather than as a capital gain, or whether § 751(a) also deems inventory gain from a partnership-interest sale to be income from a sale *of inventory*. If the latter—i.e., if the inventory gain is understood to be income from the sale of inventory—then the income can be taxable as U.S.-source income. But if the former—i.e., if the inventory gain is treated as income from the sale of a partnership interest rather than income from the sale of

inventory—then the Commissioner concedes for purposes of this appeal that the income is foreign-source and nontaxable.

We conclude that § 751(a) does not treat inventory gain as gain from the sale of inventory. As a result, the inventory gain Rawat realized when she sold her partnership interest is foreign-source income, as to which she owes no taxes.

### A.

We agree with the parties that, under § 751(a), inventory gain realized in a partnership-interest sale is treated as ordinary income for taxation purposes. The reasons we reach that result also lead us to conclude that § 751(a) does not go further and deem Rawat's inventory gain a gain from the sale of inventory.

Section 751(a) states:

> The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—
>
> > (1) unrealized receivables of the partnership, or
> >
> > (2) inventory items of the partnership,
>
> shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

The pivotal clause is the last one: "shall be considered as an amount realized from the sale or exchange of property other than a capital asset." In construing that language, we find

illuminating the Code's definition of "ordinary income": "any gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231(b)." I.R.C. § 64. That definition's operative language and § 751(a)'s key clause are materially identical. Both describe an amount realized (or a gain) "from the sale or exchange of property" as not "a capital asset." When considered in light of the statutory definition of "ordinary income," then, the words "shall be considered as an amount realized from the sale or exchange of property other than a capital asset" in § 751(a) effectively mean "shall be considered as ordinary income."

Statutory definitions are "virtually conclusive" of statutory meaning. *Sturgeon v. Frost*, 587 U.S. 28, 56 (2019) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 228 (2012)). We thus adhere to a statutory definition unless it would be "incompatible with . . . Congress' regulatory scheme" to do so. *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 163 (2018) (alteration in original) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 322 (2014)). There is no incompatibility here. And although a definitional provision is typically used to give meaning to a defined term, rather than, as here, to give meaning to the language of the definition, such a provision works both ways: if a statute defines "house" as "an enclosed structure used as a residence," one would be hard-pressed to say that the statute's use elsewhere of the phrase "an enclosed structure used as a residence" means anything but "house." Indeed, Congress has many times replaced phrases functionally identical to "an amount realized from the sale or exchange of property other than a capital asset" with the words "ordinary income," reinforcing the inference that the latter is a substitute for the former. *Compare* I.R.C. § 306(a)(1)(A), (a)(1)(B)(i), (f) (1970), *id.* § 735(a) (1970), *and id.* § 1236(b) (1970), *with*

I.R.C. § 306(a)(1)(A), (a)(1)(B)(i), (f) (2018), *id.* § 735(a) (2018), *and id.* § 1236(b) (2018).

Reading § 751(a) alongside its companion provision, § 741, cements that understanding. Section 741 states in full: "In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items)." Section 751(a) thus functions as a carve out to § 741's general rule. Said otherwise, § 741's directive applies, except as to assets within § 751(a)'s ambit. Consistent with that instruction, § 751(a)'s language tracks that of § 741, only with what amounts to a negative sign in front of it: instead of treating a gain or loss "as gain or loss from the sale or exchange *of* a capital asset," § 751(a) treats it as "an amount realized from the sale or exchange of property *other than* a capital asset." In substance, then, just as § 741 cross-references § 751(a), § 751(a) refers back to § 741.

The interlocking nature of those provisions, as well as their conspicuously similar language, provides a strong indication that they are alike in scope and effect. And all agree that § 741 mandates that a gain on the sale of a partnership interest be taxed as a capital gain rather than as ordinary income. So it stands to reason that § 751(a)'s parallel, but inverse, instruction mandates that a gain attributable to inventory (or unrealized receivables) be taxed not as a capital gain but instead as ordinary income.

Section 751(a)'s history and purpose affirm that its conformity with the ordinary-income definition is no accident. Congress enacted § 751 in 1954 as part of a major overhaul of the Code. Internal Revenue Code of 1954, Pub. L. No. 83-591,

§ 751, 68A Stat. 1, 250 ("1954 Act"). It was by then well-established that, in general, the sale of a partnership interest is "the sale of a capital asset" as to which "any gain or loss realized is treated as capital gain or loss." H.R. Rep. No. 83-1337, at 70 (1954). Section 741 simply codified that understanding. *See id.* There had arisen, however, a practice of partners using that rule to skirt ordinary-income taxes they otherwise would owe by disposing of their partnership interests before realizing income, in an effort to obtain more favorable capital-gains treatment. *See Swiren v. Comm'r*, 183 F.2d 656, 658, 660 (7th Cir. 1950); *Helvering v. Smith*, 90 F.2d 590, 592 (2d Cir. 1937); *Krist v. Comm'r*, 12 T.C.M. (CCH) 801 (1953), *aff'd on other grounds*, 231 F.2d 548 (9th Cir. 1956).

Congress put § 751(a) in place as a "prophylactic provision" to quash those efforts to evade ordinary-income taxes. William S. McKee, William F. Nelson & Robert L. Whitmire, Federal Taxation of Partnerships and Partners ¶ 17.01 (4th ed. 2024). The aim, in the words of the House Ways and Means Committee, was to "prevent the use of the sale of an interest in a partnership as a device for converting rights to income into capital gain" by mandating that gain on the sale of a partnership interest attributable to inventory or unrealized receivables "be treated as ordinary gain." H.R. Rep. No. 83-1337, at 70. Unsurprisingly, the text Congress enacted tracks Congress's stated intent: Section 751(a) says that gain realized in a partnership-interest sale attributable to property within its scope is taxed not as a capital gain but as ordinary income.

## B.

The Commissioner agrees that § 751(a) provides for ordinary-income treatment of inventory gain. But he submits that § 751(a) accomplishes that result by changing the

character of the asset sold from a partnership interest to inventory itself. As the Commissioner sees it, § 751(a) deems the gain Rawat realized on the sale of her partnership interest that is attributable to the partnership's inventory to be income from a sale *of that inventory*. If that were true, the inventory gain would indeed be ordinary income. But there would be other repercussions as well, including that the sourcing rules applicable to sales of inventory property would apply, potentially rendering the gain taxable as U.S.-source income. We find little to recommend that interpretation of § 751(a) and considerable reason to reject it.

To begin with, the Commissioner's argument is difficult to square with the text of § 751(a), properly understood. A mandate that inventory gain be considered "ordinary income" differs from a mandate that inventory gain be considered income "from the sale of inventory." If Congress had wanted to convey something other (or more encompassing) than "ordinary income," it presumably would have said so expressly. Instead, it used terminology that directly corresponds to the definition of "ordinary income."

Resisting that conclusion, the Commissioner urges us to read § 751(a)'s critical language, "shall be considered as an amount realized from the sale or exchange of property other than a capital asset," as a reference back to the two kinds of property listed above it—inventory and unrealized receivables. In his judgment, § 751(a) should be read to say that inventory gain "shall be considered as an amount realized from the sale or exchange *of inventory*." That might be a plausible reading of § 751(a) if the provision were considered in isolation. But as we have explained, "considered as an amount realized from the sale or exchange of property other than a capital asset," when construed in light of the Code as a whole, has a particular meaning: ordinary income.

There are further indications that Congress did not intend the words "property other than a capital asset" to incorporate "inventory" and "unrealized receivables." In effect, the Commissioner asks us to interpret the clause "shall be considered as an amount realized from the sale or exchange of property other than a capital asset" in § 751(a) to mean "shall be considered as an amount realized from the sale or exchange of *such property*," with "such property" referring to the two kinds of property listed in § 751(a). But Congress used exactly that locution in the very next provision of the Code: Section 751(b)(1) says that if a partner exchanges partnership property in which she has an interest for other partnership property and the exchange occurs through a partnership distribution, then to the extent the property exchanged is unrealized receivables or substantially appreciated inventory, the transaction "shall . . . be considered as a sale or exchange of *such property* between the distributee and the partnership." I.R.C. § 751(b)(1) (emphasis added). In other words, a transaction fitting that description is not treated as a regular partnership distribution but instead as "a sale or exchange of such property" (i.e., of substantially appreciated inventory or unrealized receivables).

It is a "familiar principle of statutory construction . . . that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Such an inference has particular force when the "contrasting statutory sections" were "originally enacted simultaneously," *Field v. Mans*, 516 U.S. 59, 75 (1995), because distinctions between provisions arising from "Congress' tandem review and approval" are more likely intentional, *Hamdan*, 548 U.S. at 579. Not only were § 751(a) and § 751(b)(1) enacted simultaneously, *see* 1954 Act, § 751(a), (b)(1), 68A Stat. at 250, but they are also directly

adjacent in the Code and concern essentially the same sorts of property. We cannot conclude that Congress intended to convey elliptically in § 751(a) what it said far more directly in the adjacent provision, § 751(b)(1).

The Commissioner also puts considerable weight on the 1954 Act's legislative history, finding in it a congressional design to use § 751(a) to treat inventory gain as gain from a deemed inventory sale. After explaining that § 751(a) treats gain realized on § 751(a) property as "ordinary gain," the House Report says that, "[i]n effect, the partner is treated as though he disposed of such items independently of the rest of his partnership interest." H.R. Rep. No. 83-1337, at 70. The Report later states: "The statutory treatment proposed, in general, regards the income rights [from § 751(a) property] as severable from the partnership interest and as subject to the same tax consequences which would be accorded an individual entrepreneur." *Id.* at 71. The Senate Report repeats both passages nearly verbatim. *See* S. Rep. No. 83-1622, at 98–99 (1954).

Those fragments of legislative history do not compel the Commissioner's reading of § 751(a). Not only does the Commissioner's reliance on legislative history run aground in the face of the statutory definition of ordinary income, but the sentences quoted by the Commissioner also do less work than he supposes. It is undisputed that, if we treat a partner who realizes inventory gain from a partnership-interest sale as if she independently disposed of that inventory, her gain will be taxed as ordinary income rather than as a capital gain. And as the history recounted above and other passages in the committee reports make plain, that consequence was Congress's focus in enacting § 751(a). *See* H.R. Rep. No. 83-1337, at 70. The cited statements thus are naturally read to reiterate that object, rather than to dictate that a partnership-interest sale be deemed an

actual sale of inventory. After all, the second quoted sentence says only that inventory gain is treated as the product of a separate sale "in general," not for every imaginable purpose. *Id.* at 71.

The out-of-circuit decisions on which the Commissioner relies serve him no better. *See Mingo v. Comm'r*, 773 F.3d 629, 634 (5th Cir. 2014); *United States v. Woolsey*, 326 F.2d 287, 291–92 & n.7 (5th Cir. 1963); *Quick's Trust v. Comm'r*, 444 F.2d 90 (8th Cir. 1971) (per curiam), *aff'g* 54 T.C. 1336, 1343–44 (1970). Those decisions do not turn on the interpretive issue we confront here, and they speak to that issue, at most, only indirectly.

The Commissioner looks last to the IRS regulations implementing § 751(a). Those regulations direct that the ordinary income recognized by a partner who sells her partnership interest and realizes a gain on § 751(a) property should be determined as though that property had been sold separately from the partnership interest. 26 C.F.R. § 1.751-1(a)(2), (g). If income from inventory gain must be calculated consistent with a hypothetical sale of inventory, the Commissioner reasons, that must be because the statute requires the income to be treated for all purposes as though it were in fact the product of such a sale. But while the regulation is amenable to the Commissioner's understanding, it is equally amenable to Rawat's. Even if all § 751(a) does is mandate that inventory gain be taxed as ordinary income, the amount of ordinary income still must be determined, as must the amount of capital gain attributable to the rest of the transferred partnership interest. Running a calculation based on a hypothetical inventory sale would seem to be one way to do so.

Until recently, in fact, the Commissioner endorsed an understanding parallel to the one we adopt today (albeit as to

§ 741 rather than § 751(a)). *See Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Comm'r*, 149 T.C. 63, 78 (2017), *aff'd* 926 F.3d 819 (D.C. Cir. 2019). True, the Tax Court rejected that submission. *Id.* But rather than press the issue further, the Commissioner acquiesced, appealing the Tax Court's decision to our court only on other grounds. *See Grecian Magnesite Mining*, 926 F.3d at 822. Regardless, it is notable that our construction of § 751(a) is consistent with a basic approach the Commissioner himself once viewed as interpretively correct and workable in practice.

The short of it is that § 751(a) does not of its own force render Rawat's inventory gain taxable because it does not change the fact that she sold a partnership interest, not inventory. Once we reach that conclusion, the parties agree that the inventory gain from the sale is foreign-source income as to which Rawat owes no U.S. taxes.

\* \* \* \* \*

For the foregoing reasons, we reverse the judgment of the Tax Court.

*So ordered.*